## THE MAYOR, ALDERMEN, AND COMMONALTY OF THE CITY OF NEW YORK, *v.* JOSEPH TUCKER.

The authority of those who hold public offices under color of legal title cannot be disputed in a collateral proceeding. It can only be questioned in an action brought by the attorney general in the name of the people of the state. Code, § 438.

The harbor masters of the City of New York have full power to station and regulate vessels in the streams of the North and East Rivers, and also within the wharves of the City of New York.

The office of dock master, under the corporation ordinance of 1839, Ch. 34, was superseded by the various acts of the legislature creating and regulating the office of harbor masters.

The act of 1853, "in relation to the police department of the City of New York" (Laws of 1853, p. 441), has been entirely abrogated by the metropolitan police act of 1857; and the provisions of section 6 of the former act declaring the captains of police to be dock masters within their respective limits, do not therefore, confer on captains of police any authority to act as such; nor have the police commissioners any power, under the latter act, to confer upon policemen any authority as dock masters.

APPEAL by the defendant from a judgment of the Third District Court.

The action was brought to recover a penalty of twenty-five dollars against the defendant, for refusing to obey the order of a dock master to haul a vessel away from pier 20 and 21, East River, the defendant being master of the vessel.

The ordinance sued under is chap. 34, " Of vessels, wharves, and ships," passed May 8, 1839. The defendant set up, in answer, that he was acting under the orders of the harbor master of the Port of New York, duly qualified, who had jurisdiction of the subject matter; and he denied the jurisdiction or authority of the person representing and calling himself dock-master.

*John H. White*, for appellants.

*George H. Purser*, and *George C. Genet*, for respondents.

BY THE COURT.—HILTON, J.—This action was commenced in June, 1857, to recover a penalty of twenty-five dollars imposed by an ordinance of the plaintiffs' upon any master of a vessel who should refuse, upon the direction of a dock master, to remove out of any of the public slips in this city. The defendant's vessel was lying at pier 20, East river, where she had been duly stationed by the orders of one of the harbor masters of the Port of New York, and the order to remove therefrom appears to have been given by a policeman, named Hally, acting under the directions of a captain of the police located in the seventh ward. The policeman claimed to be acting at the time as dock master, and when he ordered the defendant to remove, the harbor master who had stationed him there was present, and directed him not to remove his vessel out of the slip. He declined to obey the policeman, and was thereupon prosecuted for the penalty mentioned in the ordinance. The justice gave judgment against him, and I must confess, that I cannot perceive the slightest ground upon which such a determination can be sustained.

By chap. 72, of the Laws of 1850, p. 81, entitled " an act relating to the harbor masters of the Port of New York," the Governor was requested with the consent of the Senate, to appoint eleven harbor masters for this port, who were therein declared to have authority to regulate and station all ships and vessels in the stream of the East and North rivers, within the limits of the City of New York, and the wharves thereof, and to remove such from time to time as are not engaged in receiving or discharging cargoes. Also to determine how far those in charge of vessels should accommodate others. And any one so in charge, who refuses to obey such harbor masters, incurs a penalty of fifty dollars for each offence.

This act, thus broad and general in its terms, was subsequently modified by ch. 192, of Laws of 1851, p. 365, by restricting the powers of harbor masters to such wharves, docks, and slips, as did not belong to the plaintiffs; but the modification thus made was afterwards repealed by sec. 16, of chap.

671, of the Laws of 1857, p. 491, passed April 16th of that year, so that at the time this suit arose, the act of 1850 existed in the condition in which it was originally enacted.

The argument presented to us in favor of sustaining the judgment may be stated as follows:

1. On the adoption of the Constitution of 1846, there existed in the City of New York an officer called a dock master, possessing powers in respect to vessels lying at the wharves of this city similar to those conferred by the act of 1850 upon harbor masters. That the office was a local one, created by the ordinances of the city many years previous, and the attempt of the legislature to abolish the office by transferring the powers and duties of it to an officer appointed by the Governor, was a clear violation of that part of the Constitution (Const. 1846, art. 10, § 2) which declares that all city officers whose election is not therein provided for, shall be elected by the electors of such city, or appointed by such authorities thereof as the legislature shall designate for that purpose. That a dock master as then known and existing, was a city officer whose election the Constitution does not provide for, and the act of 1850 in attempting to confer his appointment under another name, upon the Governor, is plainly unconstitutional and void.

2. That in 1851 the legislature recognized, to a certain extent, the impropriety of interfering with the then existing office of dock master, by limiting the authority of harbor masters to those wharves and slips which did not belong to the corporation of the city, and as to such, the dock masters were restored to, and left in absolute control. In 1853, by "an act in relation to the police department of the City and County of New York" (Ses. Laws, p. 441, § 6.), the office of dock master was expressly recognized as then existing under the corporation ordinances, and captains of police were there declared to be dock masters within their respective districts, and aided and assisted by the lieutenants of police, and policemen, should do and perform all the duties theretofore performed by dock masters. That this law was in accordance with the constitutional provisions, as the persons to whom the duties of dock masters were thus assigned, were required to be appointed by certain city authorities; and further, that the repealing clause contained in the act of 1857, by which the law of 1850 was left

in its original condition, did not have the effect of divesting captains of police, and policemen, of the powers thus conferred upon them.

3. That conceding the act of 1850 to be valid and constitutional, the authority thereby conferred upon the harbor masters does not extend to the regulation of vessels lying within the slips and wharves of the city, but is limited to the stream of the river.

The first answer this argument suggests, is that parties cannot in this collateral manner dispute the authority of those who hold public offices under color of legal title. Harbor masters hold their offices, as we have seen, under the appointment of the Governor, made by the authority, and in pursuance of a statute of this state. It must, therefore, be conceded, that they hold under color of lawful title, and which can only be questioned in an action brought by the attorney general, in the name of the people. Code, § 438. Formerly, it was by writ of *quo warranto*, but the Code has substituted for this suit the ordinary proceeding by action. Until judgment of ouster is pronounced against them in such a suit, they must be obeyed, and their acts respected, so far as they exercise the powers conferred upon them; there being, I presume, no principle of law better settled than that the acts of persons thus holding public offices are valid where they concern the public, or the rights of third persons who have an interest in the act done. 3 Black. Com. 262; 4 Id. 307; 16 Vin. Abr., 114; *People* v. *Collins*, 7 John. 549; *Fowler* v. *Beebe*, 9 Mass. 231; *People* v. *White*, 24 Wend. 525.

Here the harbor master was acting under a power conferred by a statute law of the state, while the policeman assumed to be acting under the authority of certain ordinances of the city government, and the defendant under such circumstances was right in supposing it to be his duty to obey the officer appointed by the supreme legislative authority, and to disregard all municipal ordinances in conflict with a positive statute, as well as those who assumed to execute them. It would be extraordinary indeed were the rule of law not so, and this case fully illustrates its propriety. Here, the master of a vessel directed by a city policeman, posessing simply the powers of a

The Mayor, &c. v. Tucker.

constable, in addition to the duty the law imposes upon him of enforcing the corporation ordinances (Metropolitan Police Act of 1857, § 20, p. 200), to remove from the wharf:—while another officer standing by, and acting under a law of the State, orders that the vessel shall remain. For refusing obedience to the policeman, the ordinances impose a penalty of twenty-five dollars, while for declining to acknowledge and obey the State officer, a fine of fifty dollars may be incurred. To say that a citizen thus called upon is required to examine not only whether the state officer has been properly commissioned by the Governor, but also determine whether the law under which he acts is in conformity with a complicated provision of the Constitution, and make up a correct opinion upon each of these questions before he concludes to obey him, is simply absurd. The law requires nothing so preposterous, and the defendant did perfectly right in obeying the harbor master, who was acting strictly and clearly within the act of 1850, which not only confers upon him the power to station and regulate vessels in the stream of the North and East rivers, but also within the wharves of the City of New York. Act of 1850, § 3; *Adams* v. *Farmer*, 1 E. D. Smith, 588.

As to the police law of 1853, and the argument based upon it, it seems to me only necessary to remark in conclusion, that that law has been entirely abrogated by the Metropolitan Police Act of 1857, which was in force when this action arose. The powers of a policeman being those of a constable, together with such other duties as the police commissioners may impose (see Laws of 1857, vol. 2, p. 200, §§ 6, 8, 20), it follows that the policeman Hall was assuming to exercise a power which he had not by law, which was not within the power of the police commissioners to confer upon him; and in justice to them, I should add, it does not appear from the return that they attempted to do so. Indeed it may, I suppose, be safely assumed that they knew nothing of the policeman's proceedings in this respect, as at the time this case was tried, it is well known there was a conflict of authority between those appointed by the police under the law passed in 1853, and those claiming under the act of 1857.

Judgment reversed.