Giles Foot, Appellant, *v.* Alfred Stiles et al., Respondents.

The omission of one elected to the office of commissioner of highways to execute and file an official bond as required by the statute (§ 3, chap. 180, Laws of 1845), does not render his official acts void in such a sense as to make him liable as trespasser therefor. The office in such case does not become, *ipso facto*, vacant. Nor is he simply an officer *de facto*, but holds by a defeasible title; and until, in and by a direct judicial or other authorized proceeding the forfeiture is judicially declared, he is rightfully in office, at least so far as the rights of third persons are concerned, and the question cannot be raised collaterally.

*The People ex rel.* v. *Nostrand* (46 N. Y., 375) distinguished.

The provision of the Revised Statutes (2 R. S., 275, § 2) and the rule of the common law prohibiting a judge from sitting in a cause in which he is interested, apply simply to judges, *eo nomine*, or to justices or other persons holding courts; they cannot be extended to administrative officers in the performance of acts requiring deliberation and sound judgment.

A commissioner of highways, therefore, is not prohibited thereby from acting in the laying out of a highway by the fact that he is owner of lands through which the projected highway runs.

In a case where such prohibition applies at common law, the acts of the officer are not void but voidable, and the only remedy is to set the proceedings aside; neither the officer nor those acting under the authority of his decision can be held liable therefor in an action of trespass.

(Submitted January 14, 1874; decided May term, 1874.)

Appeal from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment entered upon an order nonsuiting plaintiff upon trial at circuit.

This action was for trespass in entering upon the plaintiff's land, removing fences, and for disturbing him in the enjoyment of his land.

The answer set forth that, at the time of the alleged trespass, the premises were one of the public highways in the town of Martinsburgh, that the plaintiff had wrongfully and willfully obstructed the same; that the defendant Bassett was one of the overseers of the highway of the town, and

that he was directed by the commissioners of highways of the town to remove the obstructions, which he did, as he was authorized to do. It was also alleged, that the defendant Stiles was one of the commissioners of highways, and that in the course of his duty as such, he caused the obstructions referred to to be removed from the said highway.

The facts, as they appeared at the trial, were, that Stiles, one of the defendants, Louis A. Pitcher and Van R. Leonard were commissioners of highways in the town of Martinsburgh, Lewis county; in 1867 Norton Bassett was overseer, acting under the direction of the commissioners. The usual preliminary proceedings for laying out a highway were resorted to. All the commissioners met and deliberated, but Pitcher refused to sign the order for laying out the highway. It was, however, signed by the other commissioners. Under this order and other subsequent proceedings, the defendants entered upon the plaintiff's land, over which the highway was laid out, and committed the acts alleged to be trespasses.

The plaintiff based his claim that the acts of the defendants were trespasses on two grounds. One was, that Stiles, owning land over which the highway in part passed, was interested to such an extent that he was incapacitated from acting in the character of commissioner of highways. Another ground was, that Stiles did not file the bond required by law to be filed by such a commissioner. By Stiles' direction, no award of damages was made to him for the land which he owned, that was taken for the purpose of the highway.

*H. O. Southworth* for the appellant. The commissioners in this case acted judicially. (1 R. S. [4th ed.], 1030, § 2; 1042, § 74; id., [5th ed.], 395, § 77; 4 Barb., 53, 54; 23 Wend., 324; 2 R. S. [5th ed.], 396, §§ 75, 78; 2 Seld., 433, 434, 452; *Wash. Ins. Co.* v. *Price*, 1 Hopk., 1; French's Law, 19; 4 Cook, 118; Wingate's Maxims, 170; 1 Salk., 396; 21 Mad., 63; 17 Barb., 414; 19 id., 172; 1 Hill, 654; 3 Cow., 548.) The defendant Stiles having failed to file his bond, his acts, as to himself, are void. (Laws of 1845, chap.

180, § 3 ; 1 R. S. [5th ed.], 412, § 36; 827, § 47; 5 Wend., 170 ; 23 id., 490 ; 24 id., 526 ; 1 Den., 574 ; 7 S. & R., 386 ; 10 id., 249 ; 2 Rawle, 139, 140 ; 9 Mass., 230 ; *Weeks* v. *Ellis*, 2 Barb., 320, 326 ; 15 J. R., 157 ; 19 id., 40 ; 1 Wend., 213 ; 1 Strange, 509.) In proceedings for the discontinuance of a road the duties of the commissioners are simply ministerial or administrative. (1 R. S. [4th ed.], 1047, §§ 100, 101.)

*C. D. Adams* for the respondents. The order laying out the highway is presumptive evidence of the jurisdiction of the commissioners. (3 Hill, 458 ; 5 Lans., 318.) Stiles was not disqualified from acting as commissioner in this case if the road did cross his land. (21 N. Y., 82 ; 20 id., 252 ; 2 Barb., chap. 39, p. 331 ; 3 Abb. [N. S.], 447.) His statement at the time the land was taken that he would claim nothing for his land that should be taken, estopped him as much as a written release. (1 Seld., 568 ; 28 N. Y., 297.) The omission of any of the commissioners to give a bond does not affect the validity of the highway. (1 Hill, 674 ; 4 Abb. Dig., 204.)

DWIGHT, C. The objection that the failure of Stiles to file his official bond caused the acts of the commissioners to be nugatory and void, is untenable. He must be vested with the office in order to file the official bond or take the official oath. The two acts are coupled together in the statute. Its language is : "If any person shall execute any of the duties or functions of any office without having taken and subscribed the oath of office, or without having executed and filed in the proper office any bond required by law, he shall forfeit the office to which he may have been elected or appointed." (1 R. S., 121, § 31.) Other sections require the officer with whom the official bond should be filed to give notice of neglect to file the same to the governor. (§§ 26, 27, 28.) It is plain, that the failure to file the bond is a cause of forfeiture. The office in that case, does not become *ipso facto* vacant, but there must be a direct judicial or other authorized

proceeding on the part of the proper authority to enforce the forfeiture. The act resembles a cause of forfeiture of a franchise or corporate charter, which is only enforceable by a proceeding in the nature of a *quo warranto.* That this rule applies to a forfeiture of an office is maintained in *Hall* v. *Luther* (13 Wend., 491); *Hamlin* v. *Dingman* (5 Lansing, 61); *Mayor of N. Y.* v. *Tucker* (1 Daly, 107); *People* v. *Hopson* (1 Denio, 574); *Weeks* v. *Ellis* (2 Barb., 320). The principle is well stated in the case last cited. That was an action of trespass against a justice of the peace and overseers of the poor who had acted under his warrant. It was claimed that the magistrate's acts were utterly void, as he had not taken the oath required by law, and that the overseers were trespassers. The court said, Willard, J., pronouncing the opinion, that notwithstanding the magistrate had omitted to take the required oath, his acts were not void in such a sense as to make the overseers trespassers. It was said that the only way in which the title of the justice to the office could be questioned was by a proceeding against him directly, such as a *quo warranto* or other proceeding to remove him ; and, that all the cases show that third persons cannot raise the question in a collateral way. It was further said ; the justice " came regularly into office by an election at the proper time, and assumed to act in that capacity. *The defect complained of does not go to his jurisdiction.* He was not in terms prohibited from holding the office before taking the oath, but was required to take.the oath before entering on the duties of his office, and the consequences resulting from his omission to do so, are declared to be a forfeiture. This implies, that until forfeiture is judicially declared, he is still in office, so far, at least, as the rights of the public and third parties are concerned."

*Weeks* v. *Ellis* is thus a direct authority for the proposition that the defendant Bassett cannot be treated as a trespasser. It does not, however, decide that Stiles cannot be, as that point was not involved. I think, however, that the course of reasoning there employed is applicable to this case. The com-

missioner of highways in the present case, as the justice in the case cited, was not, in terms, prohibited from holding the office before filing the official bond. He was only required to file the bond before entering on his official duties, and his failure to file it does not make his act void, but subjects him to a forfeiture of his office.

There are many loose expressions in the law books concerning an officer *de facto* and *de jure*. Under the former term, judges have frequently grouped together persons who were mere usurpers, with those who had a colorable title, and even with those who were regularly inducted into office, and yet, had committed some act which would justify a forfeiture. This last case is, however, not properly a case of an officer *de facto*. It is an instance of a rightful officer holding by a defeasible title. His acts are in all respects lawful, until the State interferes by a proceeding in the nature of a *quo warranto*. It only tends to confusion to style him an officer *de facto*, whose acts are only valid as to the public and third persons, and cannot be sustained as to himself. Such works as Viner's Abridgment collect a large number of instances in which persons rightfully in office have committed acts of forfeiture, either by mis-user or non-user, and quite analogous to the failure, under the New York statutes, to take an official oath. The persons having committed these acts remain officers until the forfeiture is declared, just as a corporation or a franchise continues to exist until sentence of forfeiture is, in like manner, judicially declared. Section 432 of the Code clearly distinguishes between the case of an usurpation of an office, or an unlawful holding of it, and a forfeiture of an office once lawfully held by the performance of some prohibited act. It is held in *Sprowl* v. *Lawrence* (33 Ala., 674–689) that a mere failure of an officer to file his bond within the time prescribed by law, does not, *ipso facto*, vacate the office. (*State* v. *Toomer*, 7 Rich., 216; *Kottman* v. *Ayer*, 3 Strobh., 92; *Crawford* v. *Howard*, 9 Geo., 316.) In *Doty* v. *Gorham* (5 Pick., 487) where an officer *de facto* had made a sale, it was held that in

a suit against himself with others for removing property thus sold he could justify under a sale. The tendency of modern decisions is to be more liberal in upholding the acts of a person who has actually obtained office and been invested with the legal *indicia* of title, and to render his official acts as valid as if his title were not disputed. ( *Wayne Co.* v. *Benoit,* 20 Mich., 176.) This is even true where there is another claimant to the office. Where an officer was regularly elected and failed to take the prescribed oaths it was said by the Kentucky court, that he was still an officer *de jure,* and that after proceedings had been taken to forfeit his office he might still come into court during the progress of the proceedings and thus defeat the judgment of forfeiture. · (*Morgan* v. *Vance,* 4 Bush [Ky.], 323; *Curry* v. *Stewart,* 8 id., 560.) There may be cases where the language of a statute is so imperative that the act of taking an official oath will be a condition precedent to becoming an officer. That is plainly not the case in the present instance, as all the language used is plainly to the effect that the failure to take the oath is a breach of a condition subsequent.

These views do not conflict with *People* v. *Nostrand* (46 N. Y., 375). In that case the officer was plaintiff and suing for property as such. He was a pure officer *de facto,* holding an office against the express mandate of the Constitution. The court held that if he came into court to recover money, he must show an unquestionable right. He must be an officer *de jure* and have a right to act. This case does not stand in opposition to the proposition that an officer *de jure* who had committed a wrongful act, which was a cause of forfeiture, could not recover. It would be subversive of public justice if he could not, since, if the forfeiture was not enforced, there might be no way of establishing the public right. It is not always wise or expedient, on the part of the State, to forfeit an office for such a cause as the present. If public policy dictates that the cause of forfeiture should not be insisted upon, it is the true theory that the officer should be regarded as having the same rights, and as being subject to the same

responsibilities, as though the act of forfeiture had not occurred. On these grounds the failure of Stiles to take the oath of office does not give the plaintiff a cause of action, in the nature of trespass against him on account of his acts upon the plaintiff's land, in connection with the alleged highway.

The next question is whether there was any such interest in the subject-matter of the litigation, on the part of Stiles, as to disqualify him from acting as commissioner. It is claimed by the plaintiff that the duties which Stiles performed were judicial, and that he was thus disqualified from acting as such commissioner, either by reason of statute provisions, referring to the disqualifications of judges, or on general principles of common law. There is no plausible ground for contending that the case falls within the terms of the Revised Statutes. Their language is: "No judge of any court can sit as such in any cause in which he is a party, or in which he is interested, or in which he would be excluded from being a juror by reason of consanguinity or affinity to either of the parties," etc. (2 R. S. [4th ed.], 463, § 2.) The words "judge," "court," "cause" and "parties" as here used, plainly show the intent of the legislature. The ordinary sense of the words must be adopted, and the phraseology held applicable to judges *eo nomine*. It cannot be extended to administrative officers who happen to perform an act requiring deliberation and sound judgment. It is clear that an act may call for such qualities and not be, in the technical sense, a judicial act, and that the person exercising them will not necessarily be a judge. Burrill, in his Law Dictionary, defines a judge as "a person whose office is to administer justice in courts held for that purpose, a public officer authorized by law to hear and determine causes and who holds courts statedly for that purpose." Bouvier's definition is: "A public officer appointed to decide litigated questions according to law. An officer so named in his commission and who presides in some court." Reference may also be made to the case of *People* v. *Wheeler* (21 N. Y., 82). These conclusions are strengthened by the fact that the statutory

provision is found in part 3 Revised Statutes concerning courts, and in title 1 of chapter 3, which by its terms " concerns the courts of justice specified in the two preceding chapters." These are all courts in the usual sense of the term, both superior and inferior, including courts of justices of the peace.

The only other point to be considered is, whether commissioners of highways would be disqualified by the common-law rules, concerning judicial officers, in such a manner as to make their acts nugatory. It is unnecessary for the decision of the present question to consider whether, as is strongly insisted upon by the plaintiff, under the Revised Statutes and amendatory acts, the powers of such commissioners in laying out roads are judicial in their nature. If it be conceded for the time being that they are, it still becomes necessary to inquire whether the rules of the common law do not, like the statutes, apply solely to judges *eo nomine*, and also, whether the disqualification, where it exists, renders the acts of the judge a nullity, so that the plaintiff may bring his action of trespass.

In respect to the first of these questions, the rule appears to have been that the person must be a judge in the usual sense of the word, with power to hear and determine litigated questions. The leading English cases are the following: *In re Hammersmith, Rent Charge* (4 Exch., 87; Roll. Abr., Judges, pl. 11); *Bridgman* v. *Holt* (2 Shower's P. Cases, 126); *Gorham* v. *Bishop of Exeter* (15 Ad. & El. N. R. [Q. B.], 52); *Ex parte Medwin* (1 E. & B., 609); *R.* v. *Hoseason* (14 East, 606); *Dimes* v. *Proprietors, etc.* (3 H. Lord's Cases, 759). See also Broom's Legal Maxims, under the rule, " No man can be a judge in his own case," where many cases are collated. The cases collated by Mr. Broom have been examined, as well as many found in *Dimes* v. *Proprietors* (*supra*), and with scarcely an exception, they refer to judges or justices or other persons holding a court *eo nomine*. Where the persons are not judges or justices in name, then the inquiry is, whether they are acting judicially in the proper sense, that is

whether they are, substantially, a court. A good illustration is *Regina* v. *Aberdare Canal Co.* (14 Ad. & El. N. R. [Q. B.], 854). In that case, there were commissioners to settle questions between a canal company and land owners, growing out of taking land for the company's purposes. They had power to take evidence on oath, to assess compensation, and to render determinations on hearing counsel. Their decisions were deposited among the records of the Court of Sessions, entered in a book and were deemed to be originals and received as evidence. Under these circumstances, it appeared that a land owner had applied to the commissioners for their sanction to the act of building a bridge. Their decision rendered upon evidence, and after argument, was declared to be a judicial act. It accordingly fell within the rule that one of the commissioners could not be pecuniarily interested, though the court also laid stress on the fact that the statute creating the commission provided that no commissioners should be interested in the result. There is no case in England that goes further than this, and Mr. Broom places the decision upon the statute rather than on the common law.

The facts, however, are much stronger than in the present case. The commissioners of highways, under our statutes, have no power to assess damages, but can only apply to other authority to summon a jury, cannot take evidence, do not make up any judicial record of their proceedings, nor enter them in any court office. They simply meet at a specified time and *hear reasons* that may be offered for or against laying out the highway, and then determine what to do. The papers on which they act, and their determination are filed with the town clerk, instead of with the clerk of a court.

The facts of the case serve to justify the remark of DENIO, J., in *People* v. *Wheeler* (21 N. Y., 86). After stating that " the statute disqualifying judges, under certain circumstances, does not reach the case, but applies only to judges of courts, and that the commissioners do not fall within that denomination," he adds: " *I do not think there is a close analogy between the cases.* An act of public administration, though

requiring the exercise of judgment, is quite a different thing from the dispensing of justice between man and man."

Should I be wrong in these views, it is very clear that the plaintiff cannot, by the common law, treat the proceeding as a nullity and bring an action of trespass as he has done. Where a member of an inferior tribunal is interested at common law, the only remedy is to set the proceeding aside. This point underwent great examination in a carefully considered case in the House of Lords, in 1852. (*Dimes* v. *Grand Junction Canal*, 3 H. L. C., 759.) The question was of sufficient importance to submit to the fifteen judges, who answered through PARKE, B. (Lord WENSLEYDALE), that the order or decree of the lord chancellor (the judge interested) was voidable and not void. A writ of prohibition may, in some instances, be granted. Where that has not been resorted to, the proper course is to bring a writ of error, for error in fact, and to assign or set forth the interest as cause of error. It was expressly said by the judges that, until the one or the other of these steps were taken, the action of the court in which the interested judge had taken part was valid, and the persons acting under its authority *could not be treated as trespassers.* It was added that, "the many cases in which the Court of King's Bench has interfered where interested parties have acted as magistrates, and quashed the orders of the court of which they formed a part, after they had been removed by *certiorari,* afford an analogy. None of these orders is absolutely void; it would create great confusion and inconvenience if they were:" (Pp. 785, 786.)

This exposition of the common law, having so much in authority as well as reason to commend it, must be accepted as final.

On these grounds the judgment of the Supreme Court should be affirmed.

All concur.

Judgment affirmed.