THOMAS S. LAMBERT, PLAINTIFF IN ERROR, *v.* THE PEOPLE OF THE STATE OF NEW YORK, DEFENDANT IN ERROR.

*Perjury — oath taken before officer de facto, binding.*

Upon the trial of an indictment for perjury in falsely swearing to an affidavit, required by law to be made, the plaintiff in error insisted that the oath was invalid for the reason that the notary public before whom it was taken was a non-resident of the State.

*Held,* that even though the notary was a non-resident, yet, as he had been duly appointed and was acting as such, he was an officer *de facto,* and his acts as such were valid and binding.

*Held,* further, that the prosecution was not bound to show affirmatively that the notary had actually taken the oath of office.

WRIT OF ERROR to review the conviction of the plaintiff in error for forgery.

*James M. Smith,* for the plaintiff in error.

*Benjamin K. Phelps,* district attorney.

DONOHUE, J.:

The defendant was convicted in the Oyer and Terminer for the crime of perjury. The offense consisted in swearing to an affidavit required by law, verifying the assets of the company and furnished to the department of insurance. The falsehood alleged was in swearing to the amount of three items. Loans secured by pledge of stocks, etc., or other marketable securities, $26,513.03; cash, $80, 475.18, gross premiums due and unreported on policies in force December 13, 1876, $66,576.86.

The defendant seeks to review certain errors alleged in the record. The main allegation of errors in this case are common with, and have been fully considered on, the writ of error in *Case v. The People* decided at this term (*ante,* p. 503), and it is only necessary, as to them, to announce the same result as arrived at.

On the facts the two cases, of course, differ, and there are also some other questions raised in this case to be passed on. On the merits a full discussion of the evidence here would be of no use, either in stating the conclusions arrived at or to the defendant. It is only necessary to say that a full examination of that evidence satisfies us that the statements alleged to be false are clearly so, and that the defendant must have known it when the affidavit was made. It is very difficult to prove a negative, but in this case we think the evidence given was abundant to justify the jury in the conclusion at which they arrived; the sworn account stated as due for premiums, was an effort to put in as assets premiums on policies not really in existence; the cash on hand, with the

exception of a small part, was wholly absent, and the secured indebtedness was simply the making of an item not really existing to swell the supposed assets. It is clear that neither of these alleged assets really had to any amount a real existence, and the statement as to them was an untruth.

The main additional point raised in this case is, that the notary before whom the oath was taken, the person selected by the plaintiff in error to take the oath before, was a non-resident of this State, and the oath therefore invalid. The appointment of that party is clearly proven, but the plaintiff in error who selected him claims that he could not administer an oath or perform an official act which would be valid.

The proposition is a startling one, and, if correct, would leave all persons who are compelled to rely on the services of officials in a position that we do not think the law intended to put them. In the view of the plaintiff in error no protest of a note, no acknowledgment of a deed, mortgage or other paper, or other of the numerous acts of such notary, would be valid, if the party who performed the act was a non-resident. Where residence is a matter often of intent, where a person is temporarily stopping out of the State, after the death of the notary, as here, it might be impossible, even in a case of merely temporary residence for the summer, to show the real residence of such notary. The statement of such a monstrous wrong, in results to the community, would almost of itself seem to answer the proposition.

But, both on principle and authority, it seems equally clear to us such is not the law. The law provides for the appointment of notaries and their qualification, and who shall appoint and confirm, and in doing so, necessarily provides who shall pass on the qualifications. The governor is to appoint, and to him the qualifications are presented to be passed upon, and the confirming power is supposed to see that the person they confirm has that qualification; and it would seem, on principle, that to that appointing power only the want of qualification here urged can be referred, and on a direct proceeding for the removal of the unqualified person. To allow the objection, would put in the power of any person intending such a wrong, as here committed, to evade responsibility; and the authorities show that the law is well set-

tled that the acts of such *de facto* officer are good. (*Read* v. *The City of Buffalo*, 3 Keyes, 447; *Parker* v. *Baker*, 8 Paige, 428; *Weeks* v. *Ellis*, 2 Barb., 320; *Greenleaf* v. *Low*, 4 Den., 170; *Wilcox* v. *Smith*, 5 Wend., 233; *People* v. *Collins*, 7 Johns., 549; *People* v. *Cook*, 8 N. Y., 67.) All these cases sustain the authority of the person acting by color of office.

Another point taken is, that there is no proof of the taking of the oath of office by the notary. The prosecution was not bound to show affirmatively that the officer had actually taken the oath of office. (*Foot* v. *Stiles*, 57 N. Y., 399; *People* v. *Cook*, 8 id., 67; *Van Steenbergh* v. *Kortz*, 10 Johns. R., 167.) It would be a gross defect in the law to permit the defendant to select his notary, as here, present the affidavit as a valid one, and then, when the defrauded parties prosecute, allow him to say that there was some defect in the appointment of the man he swore before.

Another objection taken is, that the defendant was not bound in the statement to set out the items. The answer to this is, admitting the fact as claimed, nevertheless, the sum total he was bound to state, and if the prosecution could show the sum total false, the result would be the same. Here it is evident that such sum total dependent on these items was false.

All the objections taken as to the signing of the statement, and each schedule, is answered by the general statement that there was evidence competent to submit to the jury that the defendant verified that statement, and that their verdict on that ground cannot be disturbed; and we agree with the jury that there was abundant evidence on that point.

There are several objections tending to the general one as to Reed's declarations. The witness under examination was one who had been deputed to make the examination, and needed explanations of the books of the company. He applied to the president of the company, the plaintiff in error, and the plaintiff in error referred him to Reed, and what Reed stated in explaining the books, or state of the company, was competent. If Reed was mistaken, or the books did not show what was claimed, it was in the power of the plaintiff in error to show it. The evidence, without Reed's statements on the point complained of, would seem to be abundant to sustain the verdict.

Many other minor objections are taken, but a full examination of them leads to the conclusion that no injury arose to the plaintiff in error from any of them. The case was fairly submitted to the jury, and their verdict ought to be sustained. The main and important question before the jury was, did the plaintiff in error falsely represent and swear to a statement of assets known to be false? To this, on the evidence, there can be but one answer.

The case presents features of great interest to the public and officers of institutions in which public trust is necessarily placed; and while it is true that no mere mistake or honest error should be punished criminally, it is equally clear that, unless officers of such institutions are held to honest, fair dealing, no safety whatever exists, and the safeguards placed by law are useless. The law violated in the case was one of the most necessary character; and when the violation is clear, as in this case, the court should not be astute to find grounds to allow the plaintiff in error to escape. There being no substantial error, the judgment should be affirmed.

INGALLS, P. J., and LAWRENCE, J., concurred.

Judgment affirmed.