(57 App. Div. 486.)

## PRYOR v. CITY OF ROCHESTER.

(Supreme Court, Appellate Division, Fourth Department. January 8, 1901.)

1. MUNICIPAL CORPORATION—SALARY OF OFFICERS — REDUCTION BY COUNCIL — VALIDITY.

Laws 1898, c. 182, § 96, as amended by Laws 1899, c. 581, § 7, provides that the board of estimate and apportionment of a certain city shall submit to the common council an estimate of the sums necessary to be raised by tax to pay the expenses of the city in each department, any items of which the council may diminish or reject, and adopt the estimate as amended. Section 98 provides that the board of estimate and apportionment has authority to fix the compensation of all city officers and employés, except as otherwise provided. Held, that the council could reduce the salary of the deputy city comptroller from $2,500, as fixed by the board, to $2,000.

2. SAME—SERVICES PERFORMED BEFORE BOND FILED—RECOVERY.

Where plaintiff was appointed deputy city comptroller, filed the requisite oath, and entered on the discharge of his duties on a certain date, but, through inadvertence, did not file the bond required until a considerable time thereafter, and his services were accepted by the city, he may recover for his services from the time he entered on the performance of the duties of the office, as failure to give it did not operate to forfeit the office.

Laughlin, J., dissenting.

Submission of controversy between Henry H. Pryor and the city of Rochester. Judgment for plaintiff.

On the 1st of March, 1900, the plaintiff was appointed deputy comptroller of the city of Rochester, which was an office created by section 61, c. 182, Laws 1898, and immediately filed his oath of office, and entered upon the discharge of his official duties, and has since continued to perform the same. The penalty of the bond which he was required to give was fixed by the resolution of the common council, December 19, 1899, pursuant to section 62 of said act, in the penal sum of $25,000. The plaintiff did not make or file this bond until June 19th. The board of estimate and apportionment, by its report submitted to the common council under date of February 27, 1900, fixed the salary of this official at $2,500 annually. On March 27, 1900, the common council reduced this salary to $2,000; and on the 8th day of August following the board of estimate, by resolution, fixed the compensation at $2,-200, payable monthly. On the 11th day of October, 1900, plaintiff duly presented his verified claim for seven months of salary from March to September, inclusive, at the rate of $2,200 per year, and which for that period, and at that rate, amounted to $1,283.33, and demanded payment; but payment was refused, and no part thereof has been paid. There are two questions presented to this court for its determination: First. Is the power lodged with the board of estimate and apportionment to determine the salary of the plaintiff, or is it subject to review and reduction by the common council? Second. Does the compensation of the plaintiff, at whatever sum fixed, date from the filing of his bond, or from the actual assumption of the office by him, on March 1, 1900?

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

John Desmond, for plaintiff.

James Breck Perkins and P. M. French, Corp. Counsel, for defendant.

SPRING, J. The White charter (Laws 1898, c. 182, § 96, as amended by Laws 1899, c. 581, § 7) prescribes in detail the duties of

the board of estimate and apportionment, and the mode of performing the same in conjunction with the common council. Section 96, as so amended, after providing for the composition and organization of this board, defines its duties and mode of procedure as follows:

"Within sixty days after the commencement of each fiscal year, the board of estimate and apportionment shall make an estimate of the several sums of money which they deem necessary to be raised by tax to pay the expenses of conducting the business of the city in each department and office thereof and for the various purposes contemplated by this act and otherwise by law for the fiscal year, and also to pay the principal and interest of any city indebtedness falling due during the year. After it has made such estimate, it shall submit it in writing, with such reasons for it in detail as it may have to give, to the common council, which shall convene and consider such estimate. The common council shall hear any taxpayer who wishes to be heard in reference thereto, and after such hearing it may adopt such estimate as is submitted to it, or diminish or reject any item therein contained, except as relates to the city debt and adopt the estimate as thus amended; but it shall not increase any item in such estimate for any department, office or purpose. When it shall have adopted the estimate as herein provided, the same shall be entered at large in its minutes and published in its proceedings; and the several sums in the final estimate so adopted shall be and become appropriated for the several departments, offices and purposes named in the estimate for the ensuing fiscal year; and such estimate shall be known as the tax budget."

And it then provides for the levy, assessment, and raising of the taxes in accordance with this budget. The plan outlined in this section implies that the "board of estimate," as its name suggests, is to make up its estimate as to each department in the city, containing, in a general way, the expenses which are essential in the administration of the city affairs. This estimate, however, is not final, but its approval depends upon the concurrence of the common council, and when its action has been formulated it becomes the budget for taxes for the ensuing fiscal year.

The wholesome limitation upon the legislative body, preventing any increase in the expenditures in excess of those provided for by the board of estimate, shows the check which was intended upon any lavish outlay which might be made by that body, while the right to run the pruning knife through the items recommended by the board of estimate is an equally salutary check upon the improvidence or extravagance of the board submitting the estimate. The existence of this dual authority is further emphasized by section 97 of the original act. By that section the heads of departments before the 1st of November of each year are required to furnish to the mayor written estimates "of the amount of expenditures for the next fiscal year in their respective departments or offices, including a statement of the salaries of all their other officers and employés, which estimates the mayor shall lay before the board of estimate and apportionment at its first meeting thereafter." All this is preliminary to the making of the estimate by this board, and salaries and the compensation of employés are placed in the same category as other expenditures, and are all included in the estimate submitted to the common council. If, therefore, a new office is created, or a reduction is to be made in the salary of any officer, to take effect at the expiration of the term of incumbency, or the compensation of any employé is

to be reduced or adjusted, then that salary or compensation goes into the estimate, and is within the control of the common council, the same as any other item which it may diminish or reject.

The amendment referred to of section 96 gives significance to this construction. In the original act hearings were had for the taxpayers by the board of estimate and apportionment as to any item. This right is not continued in the amended section, but the hearings are had exclusively by the common council; thus indicating that the final power as to every item, so far as the right to reduce is concerned, is vested in that body.

It is contended, however, that the supervisory and corrective power of the common council is limited by section 98 of this act, which provides:

"The board of estimate and apportionment has authority to fix the salary or compensation of all city officers and employés, except as otherwise provided in this act, and except as to such officers and employés as are required to serve without compensation."

It is urged with much plausibility that by this section a departure is intended from the general power given to the common council to review the estimate so far as the fixing of the salaries of the officers and compensation of employés is concerned; that, even though the legislative body possesses the right to reduce any item in the estimate, such right does not extend to salaries and compensation, which are made the subject of an independent section of the statute. A remarkable innovation upon the power of the common council, as this construction would require, should rest upon some just reason. If the power to fix the salaries and the compensation of employés, which in every city compose a considerable part of the burden annually visited upon the taxpayers, is vested wholly in the board of estimate and apportionment, while every other expenditure is subject to inspection and reduction by the common council, it would seem to be an unwarrantable discrimination. The mayor and his two appointees of the board comprise a majority, and a partisan or vicious mayor can therefore create a board within his domination. The board possesses the right to adjust the salaries of its own members, and the compensation or salaries of its subordinates, with the check that, when the salary of a member of the board or one of his subordinates is to be fixed and determined, the treasurer shall temporarily take the place of the member. If the power rests absolutely with this board, consisting of members of the chief departments of the city, to fix unalterably its own salaries and that of the employés in the several departments represented on the board, a dangerous power is given, and the introduction of the treasurer would be but a slight protection to the taxpayers, if the members attempted to be dishonest and engage in a little logrolling.

It has always been the policy of our government that the legislative body closest in touch with the people shall hold the purse strings, whose flexibility may add to the burdens of the taxpayers. This principle of political economy has extended through the national, state, and municipal legislatures, and has become a fixed graft upon our polity. This class of officers hold their positions by favor of

the electors, their terms are usually of short duration, and they must soon return to their respective constituencies for vindication or repudiation. The assumption, therefore, is that they will be judicious and circumspect in curtailing the expenses.

The interpretation of this act need not, however, depend upon these well-settled general principles of government. Section 96 provides the mode of procedure in very clear language. It relates, in specific terms, to "the expenses of conducting the business of the city in each department and office thereof for the next fiscal year." There is no exception or limitation, and every item of expense must go into the estimate, and the right to review every item, except as specifically limited in the section, is given to the common council. In section 96 the board of estimate and apportionment is given the power to fix tentatively the salaries of the members of the board, and compensation of its employés in the respective departments represented by the board. To show there was no design to restrict the authority to review and reduce to the departments represented on this board, section 98 was embodied in the statute. That is that the expenditures of all officers are to be fixed by this board, and not merely those within the particular departments of the officers who compose it. This construction retains the integrity of the act, and still gives effect to section 98.

In any event, after the legislature had carefully provided a project which contained a curb by one body upon the other, it evidently was not intended to destroy the efficiency of this section by providing that it did not apply to a very large and increasing portion of the expenditures of every city. There is no class of expenditures where the increase is more insidious, and yet persistent, than in the compensation of officers and employés of a city, and the right to review items of such expenditures should not be taken from its legislative body, unless the plain language of the statute requires it.

The plaintiff caused the requisite oath to be filed and entered upon the discharge of his duties on the 1st of March, 1900, but inadvertently omitted to execute and file the bond in the penal sum of $25,000, prescribed by the common council, until June 19th. The contention is that during that period he cannot recover any compensation for his services. The authorities seem to be uniform in holding that statutes requiring the giving of bonds by public officials prior to the assumption of their respective offices are directory, and do not operate to forfeit the office, unless the language is explicit in so declaring. The city has accepted the services, and must pay. U. S. v. Flanders, 112 U. S. 88, 5 Sup. Ct. 67, 28 L. Ed. 630; Foot v. Stiles, 57 N. Y. 399; Cronin v. Stoddard, 97 N. Y. 271; People v. Watts, 73 Hun, 404, 26 N. Y. Supp. 280.

The conclusions reached, therefore, are—First, that the common council of the city possessed the power which it exercised to reduce the annual salary of the plaintiff to $2,000, and which for the 10 months of the year 1900 amounted to $1,667; second, that the salary of the plaintiff at the rate fixed by the common council commenced on the 1st of March, 1900, and plaintiff is entitled to recover the same; and judgment should be ordered for plaintiff accordingly, but

without costs to either party.  All concur, except LAUGHLIN, J.,. who dissents in memorandum.

LAUGHLIN, J. (dissenting).   I am of opinion that, under the charter for cities of the second class (chapter 182, Laws 1898), neither the common council nor the mayor has any voice in fixing the salaries or compensation of city officers or employés.  By constituting a board of estimate and apportionment, with power to fix the maximum expenditures of the city government for each fiscal year, it is manifest that the legislature had greater confidence in the judgment and discretion of such board than in that of the common council; otherwise, the powers of the latter body would not have been thus. limited and restricted.   The salaries of certain officials were fixed by the legislature in this act.   Section 98 provides that "the board of estimate and apportionment has authority to fix the salaries or compensation of all city officers and employés, except as otherwise provided in this act, and except as to such officers and employés as are required to serve without compensation.  But the salary or compensation of every officer and employé shall be thus fixed before his. election or appointment, except in the first instance after this act takes effect, and shall not thereafter be changed until the expiration of the term for which he was elected or appointed."  By this section the power is clearly given to the board of estimate and apportionment to fix the salary of a deputy comptroller, no salary having been prescribed for that office by the legislature itself.   Had it been. intended that the action of the board of estimate and apportionment in fixing salaries should be subject to approval or revision by the common council, it would have expressly so provided, according to the usual course of legislation in such cases.   It is true that section 97 of the charter requires that the salaries of all officials or employés,. whether fixed by the legislature or by the board of estimate and apportionment, shall be included in the estimate to be fixed in the first instance by the board, subject only to reduction by the common council.   There is as much room for contention that the common council has authority to diminish or reject from those items the salary expressly prescribed by the legislature for a public official as the salary fixed by the board of estimate and apportionment for an official or employé, and, in my opinion, either contention is unwarranted by the language employed in the charter.   The provision of section 96, authorizing the common council to diminish or reject any item contained in the estimate submitted by the board of estimate and apportionment, except such as relates to the city debt,. does not authorize the diminution or rejection of fixed charges and liabilities.   Salaries, when prescribed by the legislature or by the board of estimate and apportionment, become fixed charges and liabilities of the city, and it is not within the province of the common council to either diminish or reject them.   The office of deputy comptroller having been created by sections 61 and 62 of the charter, and. no salary having been prescribed therefor, the power was vested in the board of estimate and apportionment alone to fix such salary. It was evidently originally the intention of the board of estimate

and apportionment to fix the salary of the deputy comptroller at $2,500 per annum, as an item to that effect was included in the estimates, but no formal resolution appears to have been adopted fixing the salary at that sum. Inasmuch as plaintiff makes no claim to this salary at $2,500 per annum, it is unnecessary to determine whether the action of the board on February 27, 1900, in including an item of $2,500 for the salary of a deputy comptroller in the estimates, was sufficient in law to fix the salary at that amount. The salary was formally fixed by such board on the 8th day of August, 1900, at $2,200 per annum. Plaintiff is therefore at least entitled to recover his salary at the rate of $2,200 per annum.

For these reasons, I dissent from the prevailing opinion.