In the Matter of the Estate of MARY MASON JONES, Deceased.

Surrogate's Court, New York County, January 13, 1930.

*John M. Dickinson*, for the petitioner.

*Hamilton H. Durant*, for Mary L. Hayden, as executrix.

*Sheppard, Jones & Seipp*, for estate of George Post, deceased.

*H. H. Snedeker*, for the executor of Louis C. Hassell.

*Sherman & Sterling*, for the administrator of J. Langdon Ward.

*Robert F. Wagner*, special guardian.

FOLEY, S. In these six accounting proceedings, covering the separate trusts created by the will of the testatrix, numerous questions arise as to the allowance of commissions to the surviving trustees and to the estates of the deceased trustees. For convenience, in view of the occurrence of similar questions in the various accountings, this decision will cover all of the questions raised. The issues will be determined as follows:

(1) I hold that the failure of certain of the trustees to file their oaths in the Surrogate's Court does not disqualify them from receiving commissions. It appears that the substituted trustee, Henry W. Hayden, was designated under the terms of the will on July 12, 1915. His oath and the instrument appointing him were filed in the office of the register of the county of New York contemporaneously with his appointment. The oath, however, was not filed in this court pursuant to the provisions of section 2568 of the Code of Civil Procedure, now section 98 of the Surrogate's Court Act. That section required that the oath of a testamentary trustee " must be filed in the surrogate's office, before letters are issued to him, or he is permitted to act." The Code section previously relating to executors and administrators had been amended to include testamentary trustees by the general revision of 1914, which took effect on September first of that year. At the same time former Code section 2637 was added requiring a testamentary trustee to file his oath and such bond as may be required by the surrogate " before exercising the duties of his office." This section is now embodied in section 167 of the Surrogate's Court Act. It also appears that the successor trustees, Arthur Iselin and Edison Lewis, who were designated respectively in 1924 and 1925, likewise executed their oaths, and filed and recorded them contemporaneously with their appointments in the register's office, but failed to file them in this court. The substituted trustee, Henry W. Hayden, died in 1925, and never filed his oath here. The trustees, Arthur Iselin and Edison Lewis, are now accounting, and, after the commencement of this proceeding, they filed their oaths and bonds in compliance with the provisions of the Surrogate's Court Act. In view of the execution of their oaths upon the

assumption of their trust duties, I am of the opinion that the oversight in failing to file them in this court should not prevent the award of compensation. The services of all three trustees were rendered in good faith and with undisputed regard for the rights of the beneficiaries interested in the trust estates. Moreover, I hold that their acts in the administration of the trusts were not invalidated by this omission.

Their authority was derived from the will. (*Matter of Ripley*, 101 Misc. 465.) Of course, this grant of power is not arbitrary, but is subject to the restrictions imposed by law for the qualification of a trustee, and the rules of law applicable to his conduct and responsibility. A testator is presumed to have intended these statutory limitations upon the powers vested in the representative under the will. The statutory requirement for the filing of the oath is founded upon the necessity of having some formal record of the assumption of duties by the trustee and some formal qualification by him. But the inadvertence can be cured by a subsequent filing under the order of the surrogate either presently or with a *nunc pro tunc* direction. (Surr. Ct. Act, § 20, subd. 6.) A refusal, persistent or contemptuous, of the fiduciary to perform the legal duty may be ground for removal or revocation of letters in a proceeding directly brought for such relief. Decisions in this and other States have sustained the validity of acts performed by a representative of an estate in good faith and beneficially, where the original appointment of the representative was not wholly void, but some defect existed in the manner of appointment or qualification. The general purpose of these validating decisions has been to avoid the legal mischief of overturning transactions performed with prudence and fidelity by such trustee, executor or administrator. (Schouler on Wills, Executors & Administrators [6th ed.], p. 2122 *et seq.;* Abbott's New York Digest [Consol. ed.], vol. 16, p. 379 *et seq.*)

In *Mulligan* v. *Bond & Mortgage Guarantee Co.* (193 App. Div. 741) the failure of a trustee to file a bond under section 167 of the Surrogate's Court Act, was held by the Appellate Division, First Department, not to be jurisdictional. Notwithstanding the defect in qualifying, the court sustained the authority of the trustee to act in that capacity. The status of a trustee who has omitted some duty in his qualification is substantially equivalent to that of a *de facto* public officer who has failed to comply with such a preliminary requirement. The courts have consistently sustained the validity of the acts of *de facto* officers done under color of title to office. (*Foot* v. *Stiles*, 57 N. Y. 399; *Carpenter* v. *People*, 64 id. 483; *Curtin* v. *Barton*, 139 id. 505.) Under the special circumstances

of this estate, therefore, I hold that the omission to file the oaths in this court was a mere inadvertence, and not a jurisdictional ground of disability or incapacity.

(2) The present accountings cover the period from 1909. A decree entered in the Supreme Court that year judicially settled the account of the trustees. Two of the trustees who accounted in that action, George B. Post and J. Langdon Ward, died during the term covered by the present accountings. Mr Post died November 28, 1913. Mr. Ward died on July 18, 1915. The trust property consists almost exclusively of New York real estate, and questions arise with respect to the allowance of commissions to their estates. Is the decree of 1909 conclusive so as to prevent such allowance? Do certain releases executed in 1913 and 1914 by these trustees and the adult beneficiaries of the trusts preclude the award of commissions? If these preliminary questions be resolved in favor of the estates of the deceased trustees, may commissions be awarded for receiving the real estate under the amendment authorizing such commissions made in 1916, notwithstanding the deaths of the trustees before that event? If commissions are allowable, at what rate shall they be fixed? I hold that the decree of 1909 is not *res adjudicata* or conclusive so as to deprive the deceased trustee of commissions on principal. The allowance of commissions on real estate included in the corpus of the trust was not raised in that action, nor could it have been, because of the absence of statutory authority for the fixation. It is not unusual for trustees to postpone their request for commissions on principal to a subsequent intermediate accounting in the administration of the estate or to a final accounting upon the termination of the trust. Commissions will be allowed on the value of the real estate and the increment thereof received, under the amendment made by chapter 596 of the Laws of 1916 to former section 2753 of the Code of Civil Procedure, now included in section 285 of the Surrogate's Court Act.

This specific question was passed upon by the Court of Appeals in the comprehensive opinion of Chief Judge HISCOCK in *Matter of Barker* (230 N. Y. 364, 372), and it was held that the " fees of an executor are to be fixed by the rules and law, which prevail at the time when they are settled," and, since the law authorized such commissions at the date of the decree, the surrogate might take into account the value of the real estate in determining as a matter of discretion the fees which should be allowed to the estate of the trustee who had died before the taking effect of the amendment. I hold further that the mutual releases executed in 1913 and 1914 between the trustees and the adult beneficiaries cannot be con-

strued so as to defeat the allowance of the commissions on principal. These releases clearly related to commissions on income. Pursuant to the discretion vested in me to fix the fee of the deceased trustees (*Matter of Bushe*, 227 N. Y. 85; *Matter of Barker*, 230 id. 364), I shall allow to each of the estates of the trustees, George B. Post and J. Langdon Ward, one-half commissions for receiving the principal of the trust at the rate in force before the amendment of 1923 to section 285 of the Surrogate's Court Act took effect. (*Matter of Rosenberg*, 124 Misc. 434.)

(3) With respect to the claims of the estate of Lewis C. Hasell and Henry W. Hayden, deceased trustees, commissions for receiving the principal of the estate, including the value of the real estate, will be allowed at the present rates fixed in section 285 of the Surrogate's Court Act. Each of these trustees died after the taking effect of the amendment of 1923 to that section.

(4) Some of the trusts included in the accountings have terminated under the provisions of the will. The present trustees claim commissions upon the real estate which has vested in the remaindermen. I hold that there was no distribution or delivery of such real property within the language of section 285 of the Surrogate's Court Act. Commissions cannot be allowed, therefore, on the vesting of such real estate in the remaindermen. The trustees performed no services and are entitled to no statutory compensation for a succession which passed without action, control or responsibility on their part. (2 Heaton Surr. Ct. [5th ed.] 213; *Matter of McGurk*, 175 N. Y. Supp. 597; *Matter of Keane*, 97 Misc. 213; *Matter of Naylor*, 164 N. Y. Supp. 462.)

(5) In the computation of the foregoing commissions, the surrogate will accept and approve the stipulation of the attorneys fixing the values of the real estate at salient times during the administration of the trust. As to the deceased trustees, such computation may be based upon the value of the real estate as of the date of the death of the respective trustee.

(6) In the discretion of the surrogate, the expenses of the accounting will be allocated ratably between the various trusts and charged against the principal thereof. (*Matter of Eddy*, 207 App. Div. 162.)

(7) The question of the procurement of funds to pay the commissions and the expenses of the accounting allowed by the decree, and the method of raising the necessary amounts, will be determined upon the settlement of the decree. The trustees are directed to serve and submit their specific written suggestion for the raising of such funds and the method of charging the amounts against the respective trusts.

Submit decree on notice and proceed accordingly.