MARY C. WILCOX, Respondent, v. SUPREME COUNCIL OF THE ROYAL ARCANUM, Appellant.

Benefit associations — expulsion of member of fraternal insurance association after trial before committee of association — jurisdiction — disqualification of members of committee for bias, prejudice and interest — when courts will examine proceedings and hold expulsion void for disqualification of committee.

1. Where a member of a fraternal insurance association is expelled from the association upon charges, and the expulsion proceedings are conducted strictly in accordance with the laws of the order, the courts cannot review the proceedings or re-examine the merits of the expulsion.

2. In an action, however, brought against such an association, after the death of such expelled member, by the beneficiary named in the benefit certificate to recover the amount payable under its terms, the courts may determine whether the expelled member was tried according to the law of the land, and in particular whether his judges were disqualified and, therefore, without jurisdiction.

3. Charges were preferred against deceased in his lifetime upon the ground that he had violated the general laws of the order in that, in substance, among other things, he had charged the supreme council of the order and its officers with graft, fraud and dishonesty. The supreme regent of the order thereupon appointed a committee, consisting of three members of such supreme council, to try the charges against deceased. He objected to the jurisdiction of the committee on the ground of bias, prejudice and interest. This objection having been overruled, he interposed an answer in which he denied that he was guilty of the charges alleged in the complaint. The committee found him guilty of the charges above named and he was expelled from the society. *Held*, that where, as in this case, there is no remedy by direct review, this action will lie and that a disqualification for interest should deprive the committee of jurisdiction; that the members of the committee were disqualified, by a direct interest in the subject-matter of the controversy, to act as judges in the trial of deceased upon such charges; that the order expelling him from the society was invalid, and that the judgment of the trial court in this action against the association for the amount due under the certificate insuring deceased should be affirmed. (*Foot* v. *Stiles*, 57 N. Y. 399, distinguished.)

*Wilcox* v. *Royal Arcanum*, 151 App. Div. 297, affirmed.

(Argued January 26, 1914; decided February 24, 1914.)

APPEAL from a judgment entered May 21, 1912, upon an order of the Appellate Division of the Supreme Court in the third judicial department, which reversed an order of the court at a Trial Term setting aside a previously directed verdict in favor of plaintiff and granting a new trial, and reinstated said verdict.

Frank Z. Wilcox was expelled from the Royal Arcanum on the 15th of March, 1906. On appeal to the supreme council the order of expulsion was affirmed. Thereupon he commenced mandamus proceedings to compel rein-

statement to membership, but died during the pendency of the proceedings. This action was then brought by his widow, the beneficiary named in the benefit certificate held by him, to recover the sum of $3,000, the amount payable to her according to the terms of said certificate. The defendant is a fraternal corporation created under the laws of the state of Massachusetts. Its highest legislative body is the supreme council, consisting of 115 members. Charges were preferred against the deceased, a member of a subordinate council, to the supreme regent, the highest executive officer of the defendant, to the effect that the deceased had been guilty of a violation of section 627 of the general laws of the Royal Arcanum, in that he had been guilty of improper conduct violative of his duties and obligations, and of conduct unbecoming his profession as a member of the order. In support of that charge three specifications were made, viz.: (1) and (2) that he had violated subdivision two of section 612 of the general laws in that he had published or caused to be published in certain newspapers defamatory interviews attacking the supreme council and its officers, and charging them with graft, fraud and dishonesty, and (3) that he had openly denounced the supreme council, and charged its officers with being grafters, thieves and robbers at a meeting of one of the subordinate councils. It was alleged that said statements and utterances were absolutely false and untrue and without any foundation in fact. The supreme regent thereupon appointed a trial committee, consisting of three members of the supreme council, to whom he referred the said charges for trial. The deceased objected to the jurisdiction of the committee on the ground of disqualification for bias, prejudice and interest. The objection being overruled, he interposed an answer, in which, among other things, he denied that he was guilty of the charges alleged in the complaint. The committee found the deceased guilty of the first and second specifications and not guilty of the third, and recom-

mended his expulsion. In their report they said that the deceased had sought to reflect upon the individual members of the supreme council and not upon the corporate body itself.

The important provisions of the laws of the order necessary to note are the following:

"Section 612, subd. 2. No circular, resolution or document abusive of any officer in the Order, or any appeal for money or assistance through any lottery scheme, shall be published, issued or circulated by any Council or member of the Order.

"Section 627. A member who shall be guilty of any immoral practice or improper conduct, violative of his duties, or of the obligation, and unbecoming his profession as a member of the Order, or of the excessive use of intoxicating liquors, or who shall enter his Council in a state of intoxication, or who shall attempt to commit suicide, or who shall assign or transfer his Benefit Certificate to his creditor in payment of or as security for his indebtedness to such creditor, shall, upon conviction thereof, be suspended or expelled.

"Section 652. When any charge is referred for trial by the Supreme or Grand Regent, a Trial Committee shall be appointed by the officer so referring, to consist of not less than three and not more than five members of the Order, who shall, if practicable, be members of the Supreme or Grand Council, presided over by the officer referring the charge."

*Howard C. Wiggins* for appellant. The courts will not inquire into the merits of the expulsion proceedings. (Niblack on Mut. Ben. Societies, § 48; Bacon on Benefit Societies [3d ed.], § 442; 1 Cooley on Ins. 128; *B. & W. Society* v. *Van Dyke*, 2 Whart. 309; *Baxter* v. *McDonald*, 155 N. Y. 83; *Haebler* v. *N. Y. P. Exchange*, 149 N. Y. 414; *Austin* v. *Dutcher*, 56 App. Div. 393; *Crow* v. *C. C. Club*, 26 Penn. St. 411; *Spilman* v. *Home Circle*,

157 Mass. 128; *Kopp* v. *White*, 65 N. Y. Supp. 1017; *Otto* v. *J. T. Union*, 75 Cal. 308.) The decision of the supreme council approving and affirming the order of expulsion is final. (*Crow* v. *C. C. Club*, 26 Penn. St. 411; *Otto* v. *J. T. Union*, 75 Cal. 308; *Hawkins* v. *Supreme Lodge*, 29 Fed. Rep. 773; *Kopp* v. *White*, 65 N. Y. Supp. 1077; *Bachmann* v. *N. Y. D. A. Bund*, 64 How. Pr. 442.) The trial committee was properly constituted. (*Karcher* v. *Supreme Lodge*, 137 Mass. 368; *Kopp* v. *White*, 65 N. Y. Supp. 1021; *Patterson* v. *Colorado*, 205 U. S. 454; *Rizer* v. *People*, 69 Pac. Rep. 315; *Holmes* v. *Carley*, 31 N. Y. 290; *People ex rel.* v. *Com. Taxes*, 95 N. Y. 554; *Duryea* v. *Mayor, etc.*, 96 N. Y. 495; *O'Brien* v. *Mayor, etc.*, 139 N. Y. 588; *Lange* v. *Benedict*, 73 N. Y. 12; *Fisher* v. *Langbein*, 103 N. Y. 94; *Austin* v. *Vrooman*, 128 N. Y. 229.) The members of the trial committee were not disqualified. (*Foot* v. *Stiles*, 57 N. Y. 399; *O'Reilly* v. *City of Kingston*, 114 N. Y. 450; *People* v. *Whitridge*, 144 App. Div. 493; *Sauls* v. *Freeman*, 24 Fla. 209; *Myers* v. *State*, 46 Ohio St. 473; *State* v. *Sutton*, 74 Vt. 12; *Peck* v. *Freeholders of Essex*, 20 N. J. L. 466; *Ellis* v. *Smith*, 42 Ala. 349; *Oakland* v. *O. W. F. Co.*, 118 Cal. 252; *Ferguson* v. *Brown*, 75 Miss. 227.) At common law a judgment entered upon a trial had before a disqualified judge was voidable and not void. (*Phillips* v. *Eyre*, L. R. [2 Q. B.] 1; *Dimes* v. *G. J. Canal*, 3 H. L. Cas. 759; *Fowler* v. *Brooks*, 64 N. H. 423; *F. C. Co.* v. *Doolittle*, 54 W. Va. 210; *Findlay* v. *Smith*, 42 W. Va. 299; *Foreman* v. *Hunter*, 59 Iowa, 550; *McMillan* v. *Nichols*, 62 Ga. 36; *Stearns* v. *Wright*, 51 N. H. 600; *Rollins* v. *Connor*, 74 N. H. 456; *Case* v. *Hoffman*, 100 Wis. 351.) A voidable judgment is not subject to collateral attack. (Black on Judgments [2d ed.], § 246; *Morris* v. *Robbins*, 83 Kan. 335; *State ex rel.* v. *Cass Co. Court*, 119 S. W. Rep. 1010; *Ex parte Koen*, 125 S. W. Rep. 401; *Emery* v. *Kipp*, 97 Pac. Rep. 17; *B. & O. R. R. Co.* v. *Freeze*, 169 Ind. 370; *Noelinger* v.

*Huff*, 31 Wash. 360; *Trawick* v. *Trawick*, 61 Ala. 271; *Small* v. *Benfield*, 66 N. H. 206; *Sanders* v. *Price*, 33 S. E. Rep. 731; *Lord* v. *Dowling Co.*, 42 So. Rep. 585.)

*Stewart F. Hancock* for respondent.    Wilcox was illegally expelled because he was tried before a biased, interested and prejudiced committee.    (*Smith* v. *Nelson*, 18 Vt. 511; *People ex rel. Meads* v. *McDonough*, 8 App. Div. 591; *Matter of City of Rochester*, 208 N. Y. 189; *W. Ins. Co.* v. *Price*, Hopk. Ch. 1; *Oakley* v. *Aspinwall*, 3 N. Y. 547; *Winans* v. *Crane*, 36 N. J. L. 394; *People ex rel. Pond* v. *Trustees*, 4 App. Div. 399; *People•ex rel. Roe* v. *Suffold*, 18 Wend. 550.)    The by-laws of the defendant did not require Frank Z. Wilcox to be tried by the very men whom he was accused of slandering; and if they did, they are unreasonable and void.    (*United States* v. *Wise*, 7 Fed. Rep. 190; *Mims* v. *State*, 26 Minn 494; *Norton* v. *Gleason*, 61 Vt. 474; *Ford* v. *Ford*, 70 Wis. 19; *Reedy* v. *Smith*, 42 Cal. 245; *Wooters* v. *R. R. Co.*, 54 Tex. 294; *Wachtel* v. *Noah Widows & Orphans' Society*, 84 N. Y. 28; *Fritz* v. *Muck*, 62 How. Pr. 69; *Ludowiski* v. *Polish Roman Catholic Benevolent Assn.*, 29 Mo. App. 337;. *People ex rel. Schmitt* v. *St. Franciscus' Benevolent Assn.*, 24 How. Pr. 216.)    If Wilcox was illegally expelled, then he was a member of the defendant in good standing at the time of his death, and the plaintiff is entitled to recover in this action. (*Foot* v. *Stiles*, 57 N. Y. 399; *Heydenfeldt* v. *Touns*, 27 Ala. 423; *Sanbourn* v. *Fellows*, 22 N. H. 473; *Smith* v. *Rice*, 11 Mass. 506; *Davol* v. *Davol*, 13 Mass. 264; *Burke* v. *I. S. & L. Assn.*, 25 Mont. 315; *Lavalle* v. *Societe St. Jean Baptiste de Woonsocket*, 16 L. R. A. 392; *People* v. *Order of Foresters*, 162 Ill. 78; *Plattdeutsche Grot Gilde* v. *Ross*, 117 Ill. App. 247; *United Workmen* v. *Zuhlke*, 129 Ill. 298; *Hoeffner* v. *Grand Lodge*, 41 Mo. App. 359; *Dick* v. *International Congress*, 138 Mich. 372.)

MILLER, J.   The unfortunate controversy resulting in the expulsion of the deceased grew out of an attempt by the supreme council to increase rates, which this court held to be illegal. (*Green* v. *Royal Arcanum*, 206 N. Y. 591.)   There is no question but that the expulsion proceedings were conducted strictly in accordance with the laws of the order, and we shall assume that the acts charged constituted cause for removal within the meaning of the by-laws.   We cannot review the proceedings or re-examine the merit of the expulsion. (*Black and Whitesmith's Society* v. *Van Dyke*, 2 Whart. 309; *People ex rel. Johnson* v. *N. Y. Produce Exchange*, 149 N. Y. 401; *Matter of Haebler* v. *Same*, Id. 414; *Spilman* v. *The Home Circle*, 157 Mass. 128.)   The question then is, was the deceased tried according to the law of the land, and that is narrowed in this case to the question, whether his judges were disqualified, and, therefore, without jurisdiction.

The learned judge at Trial Term and four of the learned justices of the Appellate Division were agreed upon the proposition that the members of the trial committee were disqualified.   The difference between the courts below was limited to the single question whether the jurisdiction of the trial committee could be attacked collaterally in this action on the benefit certificate.   As that question lies at the threshold of the case it may properly be examined first.

The ruling of the trial court that the expulsion proceedings were voidable only, and not open to collateral attack, was made on the authority of *Foot* v. *Stiles* (57 N. Y. 399), *Forest Coal Co.* v. *Doolittle* (54 W. Va. 210) and Freeman on Judgments (4th ed. § 145).   Freeman is careful to except from the rule stated by him the case " of those inferior tribunals from which no appeal or writ of error lies."   In *Foot* v. *Stiles* the right of a commissioner of highways to act in laying out a highway was questioned because of interest, and it was held that he had

acted as an administrative officer and not judicially in the sense that interest would disqualify. Commissioner DWIGHT did say on the authority of *Dimes* v. *Grand Junction Canal* (3 H. L. C. 759) that in any event the plaintiff could not treat the act as a nullity and bring an action of trespass. In the *Dimes* case a decree of the chancellor was in question, and it was held to be voidable only for the reason, as stated by Baron PARKE, that great confusion and inconvenience would result from treating as void orders and judgments of courts to which writs of prohibition or of error would run. The *Forest Coal Co.* case involved the act of a judge, which was the subject of review. Of course a writ of prohibition would not run to a body like the Royal Arcanum, and there is no method of direct review. In proceedings to compel reinstatement of a member the court will not review the expulsion proceedings or inquire into the merits, and a writ of mandamus to compel reinstatement will be issued only in case there is a clear legal right to it because of the invalidity of the expulsion order. The question of illegality is collateral to the ultimate object of the mandamus proceedings, reinstatement, precisely as it is collateral to the purpose of this suit, a recovery on the certificate. Every case in which a writ of mandamus has issued to compel reinstatement of a member on the ground that his judges were disqualified is an authority for the maintenance of this action. As far as we can discover the rule relied upon by the appellant has never been applied to a case where there was no provision of law for a direct review, but all of the decisions in such cases which we have found, back to the time of Lord COKE, are to the effect that the question may be raised collaterally. (*Bonham's Case,* 4 Coke, part 8, pp. 355, 382; *Sanborn* v. *Fellows,* 22 N. H. 473; *Gurnsey* v. *Edwards,* 26 N. H. 224; *Smith* v. *Rice* 11 Mass. 507; *Davol* v. *Davol,* 13 Mass. 264.)

In this state the statutory disqualification of a judge deprives him of jurisdiction (*Oakley* v. *Aspinwall,* 3

N. Y. 547.) While the statute (2 R. S. 275, § 2, now Judiciary Law, § 15) only applies to judges *eo nomine,* an anomalous situation would exist if the disqualification on grounds universally recognized as sufficient of judges in a body like the Royal Arcanum presented a question merely of irregularity, although a decision of this court would be void if one of its members took part who was without his knowledge related within the sixth degree to one of the parties. An appointment by a judge of probate of his brother-in-law as administrator of an estate was held to be absolutely void in *Hall* v. *Thayer* (105 Mass. 219). In the case of a juror a party has the opportunity to raise the question of disqualification, and, if error is committed by the trial court, to correct it on appeal. In such case he may very properly be held to have waived an objection which he did not take when he had a chance. But in a case like this there is no remedy by direct review, and a disqualification should deprive of jurisdiction, especially as that is now the rule in this state in the case of judges whose judgments are open to review and to the scrutiny of the bar and the public and who are themselves liable to impeachment and removal.

The rule that no man should be a judge in his own cause is so founded on common right and reason that both Lord COKE and Chief Justice HOLT asserted the power to declare acts of Parliament repugnant to it void. (*Bonham's Case, supra; City of London* v. *Wood,* 12 Modern, 669, 688.) The important question in this case is, what interest will disqualify. The appellant asserts that a direct pecuniary interest is necessary to disqualify a judge at common law. There are expressions in the books which seem to support that view, but as a rule they have been used in contradistinction to mere bias resulting from a remote interest in the question to be decided and in cases in which pecuniary interests constituted the subject-matter. In this case the subject-matter was the charge which the deceased was alleged to

have made against the members of the supreme council, three of whom were his judges. It is asserted that the only question before the committee was whether the charge was made and that the publication in the newspapers of the defamatory interviews was a violation of section 612, subdivision 2, quoted in the above statement of facts, regardless of whether they were true or false. Even assuming that position to be well taken, it ignores the third specification, to which the truth would plainly constitute a defense. Moreover the general charge was of improper conduct, violative of his duties or of his obligation and unbecoming his profession as a member of the order. Undoubtedly it would injure the order temporarily at least, to accuse its officers of being "grafters," but if the charge were well founded an impartial judge might conclude that it was made in the discharge of the highest duty to the order, and that the temporary injury resulting from the exposé of wrongdoing was more than offset by the permanent good. It is no longer the law that the greater the truth the greater the libel. At any rate one of the issues presented by the pleadings was the truth of the defamatory charges against the members of the supreme council, and of course the question of jurisdiction must be determined by the issues framed for trial, not by the evidence produced on the trial. It would seem plain that the trial committee had a direct interest in the determination of the question whether they themselves were grafters, unless the law places property above reputation. It is as though a judge defamed were to try the defamer for a criminal libel. While there is authority to support the view that he would not be disqualified in such a case (*State* v. *Sutton,* 74 Vt. 12; *Clyma* v. *Kennedy,* 64 Conn. 310), those cases appear to us to have been decided upon a too technical and narrow view of a rule, adopted by the common consent of mankind to insure impartiality and fair play. It is to be observed that in the state of Vermont a different rule was applied to the

presbytery which censured and suspended a minister for saying that its members were unfit to sit in any court. (*Smith* v. *Nelson,* 18 Vt. 511.)

There are cases in which it is suggested that the rule applicable to jurors applies, and that mere bias or prejudice will suffice. (*Moses* v. *Julian,* 45 N. H. 52; *Williams* v. *Robinson,* 6 Cush. (Mass.) 333; *Hall* v. *Thayer, supra.*) There is a strong analogy between the trial committee in this case and the jury who are the judges of the law and facts in a trial for criminal libel. This subject is considered in *People* v. *ex rel. Meads* v. *McDonough* (8 App. Div. 591), in which the Appellate Division in the fourth department adopted the opinion of Judge Vann, who tried the case at Special Term. In that case one of the trial committee was a brother of one of the complainants. It was, therefore, a case of bias, but of implied bias, which would disqualify a judge under the statute in this state. There are grave objections to extending the rule to include actual, as distinct from implied, bias in cases in which the question can only arise collaterally. The grounds of actual bias cannot be defined with accuracy and precision. A challenge on that ground in the case of a juror is largely addressed to the discretion of the court. If such bias were allowed to constitute ground for disqualification in cases like this, the acts of such bodies would always be involved in grave uncertainty. It is unnecessary, however, in this case to determine whether the rule applicable to jurors is to be applied to the full extent. It is shocking to one's sense of fair play that persons defamed should be selected to try the defamatory charge, and it is sufficient for the purposes of this case to hold that they are disqualified by a direct interest in the subject-matter of the controversy. For cases on the general subject of disqualification by interest in addition to those cited *supra,* see *The Queen* v. *London County Council* (L. R.) [1 Q. B. 1892] 190; *Stockwell* v. *Township Bd.* (22 Mich. 341); *State ex rel.*

*Getchel* v. *Bradish* (37 L. R. A. 289); *People ex rel. Roe* v. *Suffolk Common Pleas* (18 Wend. 550); *Converse* v. *McArthur* (17 Barb. 410); *People ex rel. Pond* v. *Trustees of Saratoga Springs* (4 App. Div. 399); *Matter of City of Rochester* (208 N. Y. 188).

The rule of necessity cannot apply in this case, as the trial committee could have been composed of members of the order who were not members of the supreme council. Certainly if all the latter were disqualified, it would not be practicable to appoint a committee from among their members.

The judgment of the Appellate Division should be affirmed, with costs.

WILLARD BARTLETT, Ch. J., WERNER, HISCOCK, CHASE and COLLIN, JJ., concur; HOGAN, J., not sitting.

Judgment affirmed.