(166 App. Div. 406)

PEOPLE ex rel. EMPIE v. SMITH, Mayor, et al. (No. 13/44.)

(Supreme Court, Appellate Division, Third Department. March 3, 1915.)

1. MUNICIPAL CORPORATIONS ☞488, 489—IMPROVEMENTS—ASSESSMENTS—NOTICE.

Where one raised no objection, pursuant to notice under Johnstown City Charter (Laws 1905, c. 593) § 130, of a proposed sewer, an assessment of benefits was not void because the notice was served before the district of assessment was established.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1147–1152; Dec. Dig. ☞488, 489.]

**2. MUNICIPAL CORPORATIONS ⊚⟹493 — ASSESSMENTS — OBJECTIONS — PARTY AGGRIEVED.**

Under Johnstown City Charter, § 133, authorizing objections to an assessment roll, and that a party feeling himself aggrieved may appeal to the common council, and in case of affirmance its decision shall be final, failure to appear and raise objections to an assessment does not preclude one from making objections thereafter by immediately appealing to the common council, and a party assessed has at least a reasonable time in which to appeal.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1091–1093, 1160–1165; Dec. Dig. ⊚⟹493.]

**3. MUNICIPAL CORPORATIONS ⊚⟹497—ASSESSMENTS—OBJECTIONS—PARTY AGGRIEVED—JUDICIAL REVIEW.**

Johnstown City Charter, § 134, providing for an appeal from an assessment to the common council, which shall determine the appeal on a view of the property, or on evidence, or both, and may affirm or reverse the assessment, and in case of affirmance it shall be final, merely means that an assessment roll shall be deemed complete, and that so far as the council is concerned it has finally disposed of the objections, and does not bar the common-law right of a judicial review of the action of the council.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1167, 1168; Dec. Dig. ⊚⟹497.]

**4. MUNICIPAL CORPORATIONS ⊚⟹502—ASSESSMENTS—REVIEW—EVIDENCE.**

On certiorari to review an assessment for the construction of a sewer, evidence *held* to show an excessive assessment, authorizing the court, under Code Civ. Proc. § 2141, to reduce it, so as to make it equitable in proportion to benefits.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1174; Dec. Dig. ⊚⟹502.]

Certiorari by the People, on the relation of Louis M. Empie, against Clarence W. Smith, Mayor of the City of Johnstown, and others, to review an assessment and the determination of the common council of the city in affirming the assessment. Assessment, and order of the common council confirming it, modified, and, as modified, confirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Dudley & Dennison, of Johnstown (Alfred D. Dennison, of Johnstown, of counsel, and Anson Getman, of Johnstown, on the brief), for relator.

Edwin Baylies, of Johnstown (Clarence W. Smith, of Johnstown, of counsel), for respondents.

JOHN M. KELLOGG, J.    [1] The relator's contention that the assessment is void, because the notice of the proposed improvement was served before the district of assessment was established, is not well taken. Under section 130 of the City Charter (chapter 593, Laws of 1905) the notice is to be given, in case of sewers, upon the filing by the city engineer of his maps, profiles, and estimates, which estimates show the property likely to be benefited by the sewer. The relator raised no objection pursuant to such notice, and by a provision of said section is "deemed to have acquiesced in the proposed improvement."

⊚⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

We have considered the other respects in which the relator claims the provisions of the statute were not observed in building the sewer and making the assessment. We find, however, upon the evidence, that the legal formalities were complied with, and the only question the relator may now urge against the assessment is that it is unjust in itself and as compared with other property in the vicinity.

[2, 3] The respondent contends that the relator is precluded from making these objections, by not having appeared upon the grievance day and objected to his assessments. Section 133 of the charter provides that, after the city engineer has made out the assessment roll, he shall leave it with the clerk for 15 days, giving notice thereof, and at the time stated in said notice he shall attend and hear any objections to the assessment, and shall decide upon the same, and may alter and change the assessment rolls, and when completed he shall sign and file the duplicate rolls with the city clerk. We find no provision that the failure to appear upon the grievance day and raise objection to the assessment precludes the party assessed from thereafter questioning the assessment. In fact, section 134 indicates otherwise. It provides that any party feeling he is agrieved may file with the clerk a written appeal, briefly stating the grounds of such appeal, and requires the common council to proceed to hear and determine the appeal upon a view of the property assessed, or upon the evidence, or both, and it may affirm or reverse the assessment. The section continues:

"In case of affirmance, it shall be final and conclusive, and the proceedings thereafter to collect the said assessment shall remain the same as if no appeal had been taken. Said assessment roll shall be signed by the mayor and a majority of the aldermen in office."

The relator failed to appear upon grievance day, but immediately thereafter, and after the city engineer had filed the signed rolls with the clerk, appealed to the common council, and the appeal was heard upon a view of the premises, and the evidence taken, and the assessment was affirmed. The right to appeal is not limited to those who appeared and objected to the assessment upon grievance day. Neither is the time in which an appeal may be brought stated. Section 135 contemplates that an appeal may be taken after the assessment roll and warrant are delivered to the city chamberlain, and we may infer that a party assessed has at least a reasonable time in which to appeal. In this case the grievance day was March 11, 1914, the appeal was filed March 16, 1914, and on April 20, 1914, the mayor and a majority of the common council approved and signed the roll, and directed the warrant to be attached to the assessment roll. The relator had appealed to the common council, contending that the tax which the council was imposing upon him was unreasonable and illegal. The council heard the appeal and decided against him. It was not an unprejudiced, impartial tribunal. In a sense its interests were opposed to his, and it cannot be that the law contemplates that he shall be irrevocably bound by an adverse decision of such a body. The language quoted with reference thereto may be satisfied by construing it as meaning that the assessment roll shall then be deemed complete

and that so far as the council is concerned it had finally disposed of the objections made. It cannot bar the common-law right of a person whose rights have been determined by a board acting judicially to have a proper review of such action. If the statute is intended to have a contrary effect it is without force. Wilcox v. Arcanum, 210 N. Y. 370, 104 N. E. 624, 52 L. R. A. (N. S.) 806.

By appealing to the common council the relator submitted his rights to its decision, and upon this certiorari only his claim so submitted should be reviewed. We may therefore review the determination made and inquire whether the assessment was made "in an equitable manner as near as may be in proportion to the benefits which each owner of such property may be deemed to derive therefrom, without reference to erections or improvements thereon." The real question raised upon the appeal was the inequality and the injustice of the assessment, and in this respect we think the appeal was improperly decided. The city paid $20,000 of the cost of the sewer. The remaining $10,379.78 was assessed upon the property.

[4] The relator has a farm of 40 acres, which he uses solely for agricultural, fruit, and nursery purposes. About 30 acres of the land are within the city limits, and the buildings are upon the 10 acres outside the city. The property is assessed at $1,800 upon the city assessment roll, for the purpose of ordinary taxation, and it is required to pay on account of this sewer $1,350.21. The relator purchased the property in 1903. Many years before that time a former owner had filed a map showing that Hudson avenue, Monroe street, and South street crossed the property east and west, and Genesee street and Hare street and Franklin street north and south, dividing on the map each block into lots, thus forming about 90 so-called city lots. None of the lots were ever sold. There were but few, if any, stakes indicating streets. The streets were not used, and the entire property was used as agricultural land in the same way as before the map was filed. In 1900 the population of the city of Johnstown was 10,130; in 1910 it was 10,447, and there has been but very little growth of the city for 30 years last past. Lots east of the relator's lots, and apparently more available for sale as city lots, have been upon the market for 30 years and remain unsold. There is no probability that within a reasonable time the relator's land will be available for sale as city lots. Its value is, and in all probability for a long time will be, for agricultural, nursery, and fruit purposes.

The sewer in question was a trunk sewer, intended to drain the hamlet called Thyneville, which has 110 houses and is nearly three-quarters of a mile east of the relator's property. The intervening property was mostly used for agricultural purposes. The assessment was made upon the front-foot plan, upon the property within the assessment district, without regard to the depth of the lot or parcel. A house and lot on an existing street in Thyneville, which needed a sewer, was assessed the same as a paper lot upon a paper street remote from the hamlet and used solely for agricultural purposes. The Yanneys owned 45 acres of land between relator and Thyneville, and much nearer the settled part of the city of Johnstown, and apparently

more valuable as city lots on account of location, than the relator's land. Chestnut and Melcher streets run in a northerly and southerly direction through the Yanney land. The map also indicates that Third, Fourth, Fifth, Sixth, and Seventh avenues run through their land in an easterly and westerly direction. Yanneys' assessment amounted to about $1,037.70. The fact that the Yanney land fronted on Fourth, Fifth, Sixth, and Seventh avenues was disregarded, and they were only assessed upon the front-foot plan upon Chestnut and Melcher streets, the former a plank road and the latter an old established highway; and relator's land is assessed upon the front-foot plan for the lot frontage upon the northerly and southerly streets and also the easterly and westerly streets. The reason given for this inequality is that the map filed showed that the property has been divided into lots and that the maps did not show that the Yanney land had been divided into lots.

The relator, therefore, is charged, as compared with the Yanneys, upon a much smaller tract a larger sum, for the sole reason that some predecessor in title many years ago had filed a map indicating that the property was divided into city lots. Other properties, compared with the relator's, show similar results. The relator's vacant lots, on streets where lateral sewers must be constructed in order to have any benefit from the trunk sewer, are assessed the same per front foot as the Thyneville improved lots which discharge into the sewer. The assessment is nearly confiscatory and manifestly unjust as compared with the Yanney property. It is true the relator received from the city $400 for the right to lay the sewer through his premises, while many other property owners gave the right without payment. The relator's lands have previously been underdrained. There is always the hope and possibility that the property may have some sale as lots. Manifestly he is benefited somewhat by the sewer and should help to pay for it. Much inconvenience must result if the assessment is annulled and a new assessment required. We have power, under section 2141 of the Code of Civil Procedure, to modify it.

The relator's assessment, and the order of the common council affirming it on appeal, are therefore modified, by reducing the assessment to $800, and, as so modified, confirmed, with $50 costs to appellant and printing disbursements. All concur.