LIMING et al. v. MALONEY et al.—225 S. W. (2d) 276.

Eastern Section.   July 12, 1949.

Petition for Certiorari denied by Supreme Court, October 7, 1949.

C. C. Moore and Hunt & McEwan, all of Chattanooga, for appellants.

H. G. B. King, of Chattanooga, for appellees.

R. B. CASSELL, Sp. J. This case is before the Court on appeal from the Chancery Court of Hamilton County, Tennessee, prosecuted by Fred F. Liming, C. E. Weisgarber, Clayton R. Raynesford and J. O. Rice, a committee appointed to represent all members of Local 917 of the International Union of Operating Engineers, from a decree of the Chancery Court of Hamilton County, denying the relief sought to set aside the action

of the defendants in taking over the funds, property, and management of the said Local 917, and also involves largely questions over the right to certain funds on deposit in the Hamilton National Bank, of Chattanooga, Tennessee. The exact questions between the parties are set out in the agreed questions of fact and law shown in the record. The answers of the International Officers are practically all sworn to and are so shown in the record. There are also questions of personal rights of the subordinate lodge, its members and its officers, which question actions of the supreme officers to control its affairs. These questions were submitted to the Chancellor and decided by him adversely to Fred F. Liming et al., and are set out in his written opinion in detail and also in the assignments of error contained in the record filed by the appellants, Fred F. Liming, et al., to this Court, which are as follows:

"Assignment of Error" (By Appellants)

"I. The lower court erred in denying the complainants a decree as prayed and in dismissing the bill and adjudging the costs because the undisputed facts in the record show that William E. Maloney, International President, took possession of the property of Local Union 917, amounting to approximately $180,000 in bonds and cash, four automobiles, office furniture, etc.; removed its officers and appointed new officers in their stead; denied it the right to hold meetings and elect its own officers and manage its own affairs, all without justification, and,

"II. The lower court erred in holding that the remedy of the membership of Local 917 was first to appeal to the International Executive Board and from it to the International Convention because

"(a) The action of William E. Maloney, International President, in taking over the property of Local Union 917 and denying it the right to manage its own affairs, invaded the property rights of the membership of said Local Union 917 and threatened the loss or dissipation of its property for which they were entitled to relief in a court of equity and not barred by the provisions of the Constitution of the International Union providing for disciplinary action and appeals with respect thereto;

"(b) All of the membership of the International Executive Board filed answers in this cause averring that the action of the said International President was legal and justified, thereby prejudging the appeal that had been taken to it by the complainant Fred F. Liming, justifying the withdrawal of said appeal;

"(c) While appeals to the International Executive Board are authorized by the Constitution, provisions for prompt hearings and decisions thereof are not provided for and the International Convention, as the tribunal for final decision within the Union, meets only once each four years and appeals within the Union could have been so long delayed as to deny these complainants their rights;

"(d) An appeal presupposes a valid hearing and where no charges are placed and no hearing is afforded, there is no lawful action to appeal from;

"(e) The appeal provided was to those who perpetrated the wrong complained of and the law does not permit a man to sit in judgment of his own acts;

"(f) Because Section VI of the Constitution authorized the General President, whose action is to be appealed from, to review the case when filed with the General Executive Board, render decision on the merits

of such case and make a finding of fact which shall be final and conclusive.

"III. The lower court erred in failing to adjudge the suspension of appellant Joe W. Rogers illegal and void; ordering his re-instatement and enjoining the defendants from interfering with his rights as a member because he was suspended for five years without notice, charges preferred and hearing had, and the General Executive Board without any appeal to it, entered an order confirming his suspension."

In disposing of these assignments of error, we might take up and consider the said assignments in the order in which they are numbered, but as the same questions are more or less included in more than one assignment of error, we treat them more or less altogether. We think it best to handle them in such a manner so as to be sure not to overlook any material matter.

All of the parties having filed proper pleadings, the appellants here and complainants below especially filed answers, averring that the action of the Chancellor in denying the complainants, Fred F. Liming, et al., any relief and dismissing the bill, adjudging the costs against him and his associates because the facts showed that William E. Maloney, the International President, was without his rights as such in taking possession of Local Union 917 funds amounting to approximately $180,000 in bonds, cash, automobiles and furniture, and removing its officers and appointing new ones and taking away the right to manage its own affairs and elect and appoint its own officers, *was without justification* and erroneous. From this Opinion of the Chancellor and from our examination of the record, we think that the action of William E. Maloney, International President, in taking possession

of the Local Union 917 property and putting it under the supervision of the International Organization, the parent union, was correct and it was so held by the Chancellor, and we are of the opinion that under all the facts of the case and under the law this was a correct decision, and this assignment of error is overruled.

We found no fraud of any kind on the part of the International Organization or those in charge and the actions of William E. Maloney and his associates seem to have been for the best interests of the organization as a whole, as the record shows a very disorganized and rebellious action on the part of the majority of those managing the affairs of the Local 917. The order of William E. Maloney, International President, to his subordinate, H. E. Miller, to take charge of the Local Union 917 seems to have been wise, justified by the occasion, and free from any prejudice of any kind. It was best for all concerned and we have not been shown that it injured any one concerned.

The report of H. E. Miller, International Representative, is found in the record and, among other things, contains the following language: ''I find on investigating that the meetings of Local #917 are very disorderly and whereby several of the members have appeared in the meetings drunk and disorderly and attempting to use knives and cursing the officers of the Local Union. These officers have been denied the privileges by the membership of exercising the duties of their office. Bro. John L. Hand was deprived of the title as Business Manager of Local #917 and has no control whatsoever over the finance of this Local Union''.

This report shows, to our mind, such a condition of affairs that this Court finds that the money and property

of the Local 917 was being wasted and dissipated. (See record page ——). The income of said Local 917 consumed in exorbitant salaries, donations ill-advised, and offices, run at a large loss, to wit, $13,915.95 from December 31, 1946 to April 1, 1947. Said report seems to be such as shows a full examination had been made by him of all matters submitted to him by the International President and is more than sustained, in our opinion, by the facts in the record. These matters are fully set out in the most excellent opinion of the Chancellor found in the record, which shows a careful and painstaking examination of a most voluminous record in the case. As shown by the Opinion of the Lower Court, we do not find that any one has been deprived of any right to work, neither have their funds been dissipated since the order of the International President William E. Maloney was issued, but on the contrary seemed to have been carefully preserved by the order of the International President.

It is further assigned as error by the appellants, in Assignment No. II, that the Lower Court erred in holding that the remedy of the membership of Local 917 was first to appeal to the International Executive Board and then to the International Convention before appealing to the courts which was done by the filing of the bill herein. The appeal to the International Executive Board and then to the International Convention was authorized by the Constitution of the Organization, but such appeal was not taken. The Court is of the opinion that this assignment of error is not well taken because the prerequisite of appeal in the method prescribed by the charter and by-laws of the organization is necessary and in our opinion the only method which the appellant has

to take up and have considered by the courts the question involved in this assignment. There are no property rights involved nor any other method provided whereby the courts can consider the questions involved in this assignment.

We might further say that the complainants below and the appellants here were required to exhaust their remedies in good faith before the tribunal within the organization in accordance with both local and international constitutions and embodied in their application for membership in such organizations, before the Courts will assume jurisdiction of such a controversy. These constitutions provide for appeal finally to the International Convention and the complainants below and appellants here failed to appeal to or to appear at the Convention. The Chancellor was of the opinion that in failing to appeal to and/or appear at the Convention the said complainants forfeited their rights and cannot appeal to the Courts now unless they had complied with the requirements of their respective constitutions. The Chancellor answered this question in the affirmative and we affirm his decision, and this assignment of error is overruled. Numerous authorities could be cited to sustain this proposition of law and they are set out in the Chancellor's Opinion; so it is needless to refer to this again. However we do cite decisions of our Supreme Court hereinafter, which decisions it seems to us fully justify the Chancellor in his written opinion which is fully copied in the record.

The *Third Assignment of Error* raises the question, must a member, Rogers, suspended by the President of the parent union, appeal to a higher tribunal within the organization, for instigating strikes and for refusing

to return to work and for assaulting without cause the President's deputy, exhaust said remedy within the organization, in accordance with his contract before resorting to the Civil Courts, especially where he was given notice of the charges placed against him and the time and place of his trial fixed. The Chancellor answered this question in the affirmative in his Opinion in the record. Especially is the Chancellor correct in this holding in view of the fact that there appears to be no proof showing any loss of employment on the part of Rogers. In this, we hold with the Chancellor in the affirmative and overrule this assignment of error.

On the question of whether a party belonging to these organizations must present his appeal under the constitutions and rules themselves and seek redress in this manner before appealing direct to the Courts, there seems to be two schools of thought. One school of thought holds that the party complaining must first exhaust his remedies through the various channels provided by the by-laws and constitutions of the organizations themselves before appealing to the courts of law or equity. The other school of thought holds that notwithstanding the provisions of prohibition in the by-laws or constitutions providing for such appeals, still the offended party can ignore such provisions and appeal direct to the Courts for relief.

On examination of the record herein it is shown that it is provided in the written portions of the constitution that appeals, etc., must be prosecuted according to the methods as set out in the constitution and by-laws before the appeal can be taken to the Courts. Article VI, Section 1, of the Constitution of the International Union of Operating Engineers and Local Unions coming under

its jurisdiction and under which the International President acted, is as follows: "Section 1. It shall be the duty of the General President to preside at all meetings of the General Convention. At least thirty days prior to the holding of a General Convention he shall publish all decisions rendered by him during his term of office and shall mail copies of same to each Local Union in sufficient numbers to allow a copy for each delegate to the convention. He shall review all cases, complaints and charges filed with the General Executive Board or the General Secretary-Treasurer. He shall be empowered to render decisions on the facts merits of such cases, complaints and charges and his findings on the facts shall be final and conclusive. He shall also be empowered to interpret the provisions of the Constitution and decide questions of law arising thereunder. He shall be vested with all the administrative powers of the organization. He shall have power to direct and supervise all Local Unions, Local Officers and any other subdivision of the International Union and members. Whenever in his opinion the best interests of the organization require it, or Local Unions, Local Officers and any other subdivision of the International Union or members shall be deemed by him to be incompetent, negligent, or to have failed in carrying out their respective duties, or to have violated the Ritual, Obligation, laws, rules or decisions of the organization or its duly constituted authorities, he shall have full power to suspend or remove such individual members, suspend or remove such local officers, suspend or revoke charters of such Local Unions or place such Local Unions and their Officers and members under International Supervision. He shall have power to designate and appoint persons to fill the

places of those Local Officers of Local Unions suspended, removed or placed under International Supervision, which appointees shall conduct the affairs over which they have been appointed for such time and in such manner as he may direct. All of the business, finances, affairs and government of any Local Union whose charter shall have been suspended by the General President or shall have been placed under International Supervision by him, shall be fully and completely conducted and administered by the General President or his deputy thereunto appointed with full power of control therein and thereover. During such suspension or International Supervision all rights and powers of the Local Union to conduct its own affairs shall be suspended. He shall countersign all vouchers and checks for payment of monies or for withdrawing funds from the bank. He shall have power to appoint Local Officers pro tem and all committees not otherwise provided for, to deputize any member in good standing to perform any of the powers and duties of his office. He shall be vested with full discretionary power to issue charters. He shall have power to appoint Representatives of the International Union in such localities as shall appear to him to be for the best interests of the organization. He shall preside as chairman of the General Executive Board and shall make a full report of the work in his office at each Board meeting. He shall devote his full time to the duties of his office. He shall have power to call upon any and all subdivisions, officers and members for assistance and advice when occasion demands or requires it. He shall be strictly accountable and responsible for the faithful performance of his duties and shall administer and enforce every law, rule,

regulation and requirement of the Constitution, Ritual and Obligation. He shall be vested with unlimited discretion in the application and administration of his powers and duties. He shall be vested with such other powers and duties as the General Executive Board may from time to time specifically delegate to him. Any and all members, Local Officers and Local Unions affected or aggrieved by any act or decision of the General President, may demand a hearing thereon before the General Executive Board, with appeal to the General Convention in the manner hereinafter prescribed. The General President shall receive as salary such amount per annum as the General Executive Board may from time to time determine; provided, however, that such salary shall not be less than Fifteen Thousand Dollars per annum. He shall by virtue of his office be one of the delegates representing this organization at the conventions of the American Federation of Labor or sessions of any of its departments. Should any Local Union be involved in trouble or submit grievances to the General President or the General Executive Board, the General President shall visit such Local Union in person or send a deputy. All powers heretofore vested in the General Executive Board when in session shall, when the same is not in session, pass to and vest in the General President. All of the acts and decisions of the General President shall be reviewable by the General Executive Board and shall continue in full force and effect until revoked by action of the General Executive Board.''

There are other questions raised in the pleadings and noted by counsel in argument which are not directly passed on in this opinion, but the matters decided by the Court are the material questions in the case and conclusive of the case.

In conclusion, we observe that some way must be provided whereby in organizations, such as the one under consideration herein, questions which necessarily arise in the conducting of their affairs can be controlled, and if the parties who compose them, make their own plans and put them into written constitutions, etc., and become dissatisfied with them and do not follow their own methods of control, then, of course, the conditions as shown in the record to have existed have no cause of complaint if their own plans for controlling their own property are not followed by them in asking for relief.

The questions involved have been elaborately briefed by various counsel for all parties and we can do no better, in setting out the identical questions involved, than to refer herein to the Chancellor's written Opinion in the Chancery Court below in this case. While his Opinion is at some length, it is well worth considering as it shows able and exhaustive research and its findings, in our opinion, are supported by the record in the cause.

We are of the opinion that the Chancellor's holding in every respect should be affirmed and the complainants' suit be dismissed with costs and that the Lower Court and this Court has jurisdiction to dispose of the questions raised by the pleadings herein, the Supreme Court of Tennessee having decided these various questions of law and fact. In the case of Barthell et al. v. Zachman et al., Nashville, December Term, 1930, 162 Tenn. 336, 341, 36 S. W. (2d) 886, the Supreme Court of Tennessee, held that: "Where the constitution and laws of a fraternal society require that in matters of disipline and internal regulation the members first exhaust their remedies within the society before litigating their contentions in the courts, remedies within the society must

be exhausted before the members can resort to the courts. Vaughn v. Herndon, 91 Tenn. [7 Pickle], 64, [17 S. W. 793]; Honea v. American Council, 139 Tenn. [12 Thomp. 21], 23, [201 S. W. 127]; Wilcox v. Supreme Council, [210 N. Y. 370, 104 N. E. 624], 52 L. R. A., N. S., 806; Wellenvoss v. Grand Lodge, [103 Ky. 415, 45 S. W. 360], 40 L. R. A. 488.''

An examination of the case of Barthell v. Zachman, supra, shows that the facts passed on were almost on all fours with those contained herein and the law declared and cited are as expressed herein and we are content to rest our opinion on this case and those referred to therein. 162 Tenn. 366, 36 S. W. (2d) 886.

And in further consideration of this case, the Court says that it would seem that one may sometimes feel that they have not been fairly and justly treated by the decisions of the body that they belong to; then it is no more than right that they should have the opportunity to have their rights passed on by some other party and if the laws or rules governing their organization provide the method of doing this and this method is fair and right, the Court sees no cause for complaint for there was an open door that they may have entered leading to relief, and if this has not been followed we can see no cause for complaint.

■ There can be no just cause for complaint when the party complaining has not made the proper effort to correct the mistake claimed in the manner provided, assuming, of course, that the method provided is fair and just. In this case we can see nothing unfair or unjust in the method laid out herein. We see nothing that violates any of the provisions of the laws of the State of Tennessee or of the Due Process laws of the United

States. In other words, no Constitutional rights of the appellants have been denied the appellants. From our examination of the record we have not discovered nor have the appellants by counsel pointed to any wrong done the appellants. The order of the Supreme Lodge (Maloney) in temporarily taking charge of the affairs of the subordinate lodge appears to us to have been best for all concerned, and, as stated, we feel that no one has been injured but on the contrary benefited by said order.

In this case the complainants below and the appellants herein also filed a petition to enjoin the defendants from adjusting and paying out certain funds which are claimed in the petition were about to be wasted by the defendants. This injunction is based on the amended bill as filed and the dismissal of the petition for the injunction it is claimed works a dismissal of the injunction on its merits. This is correct and the dismissal of the bill does work a dissolution of the injunction and we so hold and it cannot be sustained under holdings of our Supreme Court set out in 162 Tenn. 336-338, 36 S. W. (2d) 886.

There may be other questions of minor importance not expressly referred to herein, but the controlling points are referred to in this opinion and the disposition of the main questions is sufficient to and does control every point material to the rightful disposition of the case.

The question of fees to be allowed to the Trustees appointed by the Lower Court will be referred to the Chancery Court of Hamilton County, who will fix said fees after a proper hearing, which fees will be paid out of the funds in court and when said Trustees are discharged upon their accounting and proper settlement of their care, their bonds will be discharged.

This case is affirmed and remanded to the Chancery Court of Hamilton County for such other and further action in accordance with this opinion as may be necessary for the proper disposition of the case.

The costs of this appeal are taxed against the complainants and their sureties.

The Court cannot fail to express its appreciation of the able presentation of authorities by counsel for both sides in brief and argument before the Court, they having at great length and with much thoroughness looked after the interests of their respective clients, which has been of much help to the Court in its investigation.

McAmis and Hale, JJ., concur.

McAMIS, J. I concur in the conclusion that the Chancellor's decree should be affirmed. I am of opinion, however, that the conduct of the appellants as shown by the findings both of the Chancellor and of this court, in which I concur, has been such that if they had exhausted their remedy within the Union and had been denied relief by that body on final appeal within the Union they would still not be entitled to relief from the actions of which they complain in a court of equity. I am, therefore, of opinion it is not necessary to pass upon Assignments Two and Three. The question as to whether the provisions of the By-laws as to notice, trial and appeal are adequate and fair and afford a sufficiently speedy settlement of the rights of members and locals is of such great importance that it should be reserved until a case arises making decision necessary to a determination of the rights of the parties.