Guy Fittipaldi et al., Individually and on Behalf of Other Persons Similarly Situated, et al., Appellants, v. Edward J. Legassie, Individually and as President of Local No. 12, United Brotherhood of Carpenters and Joiners of America, AFL–CIO, et al., Respondents.

Fourth Department, April 8, 1959.

*Costello, Cooney & Fearon* (*Vincent A. O'Neil* of counsel), for appellants.

*Breed, Abbott & Morgan* (*Robert P. Knapp, Jr.,* of counsel), for respondents.

BASTOW, J. The plaintiffs appeal from so much of a judgment made following a nonjury trial as (1) dismissed the complaints of Fittipaldi, Loniewski and Morrison on the merits; (2) dismissed the complaint of the plaintiff, Fargo, upon the merits after granting him partial relief that he be reinstated as a

member in good standing of Local No. 12, United Brotherhood of Carpenters and Joiners and (3) decreed that "plaintiffs' application" for an election be denied "without prejudice to a new application" if the prohibition of the united brotherhood against an election had not been withdrawn within four months.

It appears that on November 24, 1954 the officers of Local No. 12 wrote to the defendant, Johnson, a member of the general executive board of the brotherhood, stating that there was internal friction in the local union and requesting that the international union "take over" the local. On December 15, 1954 Hutcheson, the general president of the brotherhood, issued a directive to the local stating that he was appointing the defendant, Johnson, "to assume supervision over the officers of the Local Union." On May 20, 1955 Johnson wrote a letter to the local union instructing the members that pursuant to the authority vested in Johnson by the general president no election for local union officers and business representatives would be held in 1955. Parenthetically, it may be here said that Johnson continued his supervision over the local up to the time of the argument of this appeal and continued to forbid the election of officers until the decree of the trial court was made in April, 1958 granting plaintiffs the right to apply for further relief if the prohibition against an election had not been withdrawn. It is conceded upon this appeal that such prohibition was withdrawn within the four months' period and officers were elected in June, 1958.

The action of Johnson, however, in suspending the right of the members to elect officers was the precipitating cause out of which arose, directly or indirectly, the charges against the plaintiff, Fargo, resulting in his conviction and the imposition of severe penalties. It appears that at a meeting of the local union on May 26, 1955 the defendant, Legassie, president of the local read the letter from Johnson stating that there would be no election of officers. It is the claim of the defendants that at this time Fargo made certain remarks. On July 11, 1955 charges in writing were served upon Fargo. Therein it was alleged that at the May meeting Fargo called the defendant, Legassie, president of the local union, a " G. D. Communist " and when asked by the defendant, Lawyer, international representative of the brotherhood, to repeat the statement Fargo said " This is getting to be a communist outfit." It was further alleged that this was in violation of Fargo's obligation " which states in part * * * I pledge myself to be obedient to authority, orderly in the meetings, respectful in words and actions, and charitable in judgment of my Brother members."

The charges conclude with the statement that the penalty for such violation was provided in section 55 (C) of the constitution and laws of the united brotherhood. In the light of subsequent developments it is important to note that the quoted section and paragraph have nothing to do with any pledge or obligation. Section 55 (C) subjects a member to punishment for willfully slandering a member or officer, violating trade rules, or misapplying union funds.

These charges were brought on for trial before the Adirondack District Council. The constitution of the brotherhood provides (§ 26 B) that district councils may be formed under certain conditions, one of which is that where two or more local unions in adjoining territory request it or upon a finding of necessity therefor by the general president. Such district councils are governed by such laws and trade rules as shall be adopted by the council and approved by the member unions (§ 25 A). The Adirondack Council has been in existence at least since 1949 and covers a vast geographical area in the central and northeastern parts of this State. This council has by-laws to which further reference will be made.

The charges against Fargo were tried before a committee — the constitution of which will be hereafter considered — on August 1, 1955. Fargo denied making the statements. At least six witnesses were called by the prosecution each of whom answered in the affirmative when asked if he heard Fargo say '' this is getting to be a communist outfit.'' None was asked whether he heard Fargo call the union president '' a G. D. Communist,'' and none testified to this fact. Then to add to the confusion the chairman of the trial committee inquired if the only charge being prosecuted was the one that Fargo said '' that this is being a G. D. communist organization '' to which the prosecutor replied in the affirmative. Of course, no such charge had been made against Fargo. An examination of the transcript of the trial minutes discloses that there was no testimony from any witness before the committee that Fargo called the union president '' a G. D. Communist.'' Upon that record, however, the trial committee found Fargo guilty as charged, imposed a fine of $100 and suspended his right to attend meetings or to serve as a delegate, officer or committeeman for a period of three years.

Fargo thereafter commenced this action to set aside the fine and other penalties and to be reinstated as a member in good standing. The trial court, as has been stated, directed Fargo's reinstatement and based its decision upon a finding that Fargo's duly taken appeal to the general president was com-

pletely ignored for more than two years. We agree with this determination but conclude that the record before the trial committee was bare of evidence to sustain the decision of the trial committee which was arbitrary, capricious and contrary to natural justice.

Curiously, upon the trial of this action the defense called several witnesses who testified positively that they had heard Fargo call the union president a " G. D. Communist " at the meeting. All of these witnesses were present at the union trial and most of them were called as witnesses for the prosecution. None of them gave any such testimony before the trial committee.

Thus, there is presented a record of a union trial that was farcical from inception to conclusion. The garbled charges alleged a violation of a pledge or obligation of Fargo to do certain things. No proof was submitted or mention made upon the union trial of any such pledge or obligation. The charges asked that punishment be imposed pursuant to section 55 (C) which made no reference to any pledge or obligation. The only portion of that section here applicable made it a punishable offense to willfully slander an officer or member. But upon the union trial no attempt was made to prove the allegation that might have been found to be such a slanderous remark. This conclusion is fortified by the fact that during the union trial the chairman read into the record the verbatim language of the charges and thereupon certain additional alleged charges were withdrawn. Thus, it is clear that all parties knew that the sole remaining charge was a violation of section 55 (C) making it a punishable offense to willfully slander a member or officer. The record of the union trial is barren of any such proof.

It is recognized that judicial tribunals are reluctant to intervene in internal union disputes. (See Summers, Judicial Settlement of Internal Union Disputes, 7 Buffalo L. Rev., 405, 407.) The general rule has been formulated that in the judicial review of the action of an association such as a labor union in imposing punishment of expulsion upon a member after trial on notice such determination must stand " unless the record is so bare of evidence to sustain the decision on any recognized ground as to show the association's decision to be contrary to natural justice, purely arbitrary and one that no honest mind could adopt ". (*Madden* v. *Atkins*, 4 N Y 2d 283, 297, DESMOND, J., in concurring opinion.) Applying this rule to the facts here presented, resulting in the penalties imposed upon Fargo, it is found as a matter of law that the determination of

the trial committee may not be sustained because the record before it contains no evidence to substantiate the charges.

This record, however, presents a more fundamental error that vitiated not only the action taken against Fargo but also against the appellants, Fittipaldi, Loniewski and Morrison. In view of this legal error that infected all the disciplinary proceedings within the council against these appellants it is unnecessary to review in detail the action taken against the latter-named appellants. It may be gathered from the record that Fittipaldi and Loniewski were members of the dissident group that the entrenched officers of the local union, working with or without the aid of the brotherhood representatives, were apparently seeking to suppress. It appears that soon after the Fargo trial charges were brought against Fittipaldi and Loniewski. It was alleged that they refused to come to order at a union meeting, used abusive language and threatened to use physical force. Fittipaldi had been called as a witness by Fargo at the latter's trial. Fittipaldi and Loniewski appeared at their trial with appellant, Morrison, as their " counsel ". The latter was a member of defendant, Local No. 2355, which was not a member of the district council. Fittipaldi and Loniewski refused to stand trial on the ground that the trial committee was constituted in an improper and invalid manner. It does not appear that the original charges were tried. Instead the two were found guilty of contempt for their refusal to stand trial and severe punishment, including suspension for five years, was imposed.

In the course of this hearing Morrison, the " counsel ", became involved in a verbal altercation with a member of the trial committee. It was claimed that Morrison made an insulting remark to the committee member. Fittipaldi and Loniewski were asked if Morrison was speaking for them and they responded in the affirmative. Thereupon, new written charges were filed against the three men. The allegations therein related solely to the remarks made by Morrison. Loniewski and Fittipaldi had made no remarks but were charged with something resembling guilt by association in that they had answered in the affirmative when asked by the secretary if Morrison, as their counsel, was speaking for them. These charges recited various provisions in the brotherhood constitution, decisions of the general executive board and parts of the ritual. The sole charge was that the three men violated their oaths of obligation, were guilty of improper conduct and committed an offense discreditable to the brotherhood. The appellants refused to stand trial upon the ground that the trial committee was illegally

constituted. Again, it does not appear that the substantive charges were pursued. The three appellants were found guilty of contempt for refusing to stand trial and further punishment imposed.

Thus it appears that as a result of these activities six trial committees were purportedly constituted to consider two sets of charges against Fittipaldi and Loniewski and one set each against Fargo and Morrison. We agree with the contentions of the appellants that all of these trial committees were illegally organized in violation of the constitution of the brotherhood and the by-laws of the district council. None of the committees had valid authority to hear the charges and their determinations are a nullity.

The by-laws of the district council contain detailed provisions for the creating and functioning of a trial committee (§§ 25–31). Section 25 provides that " There shall be a Trial Committee of eleven members selected and elected at the meeting in July. They shall try all charges that are submitted to them by the District Council. All trials in this District Council shall be governed by the General Constitution and Laws." A reading of the previous section (24) shows that this July meeting was the one fixed for the annual election of officers. It is conceded that at the time the union trials took place no such elected trial committee was called upon to function. Indeed it does not appear that one had been elected in 1954 or 1955. Moreover, the suppression order of international did not purport to prevent the election of a trial committee. Section 56 E of the general constitution provided in part that " The Local Union or District Council shall nominate the names of eleven members most competent of giving a fair and impartial hearing of the case. The Recording Secretary shall place the names in the ballot box and the Vice President shall draw the same from the box and call the names aloud until five have been drawn, when the case will be given to them for investigation."

These provisions of the brotherhood constitution and council by-laws are not in conflict when read together. The former placed the power in the district council to nominate 11 members from which the trial committee was to be constituted. The by-laws of the council, approved by Hutcheson, as general president, gave the members of the council the right to select and elect 11 members at the annual meeting in July. This constituted the council's nomination of a trial committee.

No such proceeding was followed here. It was stipulated upon the trial that the defendant, Dashnau, president of the council, named 11 members of the council that " he deemed most

competent of giving a fair and impartial decision in the case.'' This was a plain violation of the quoted provisions of by-laws and constitution. The appellants were not tried by a committee drawn by lot from members selected, elected or nominated by the district council. The membership of the council was ignored. The appellants were forced to trial before committees hand picked by the council president in direct violation of the express command of by-laws and constitution. In fact one of the persons bringing charges against three of the appellants as a result of the verbal altercation between him and Morrison was a member of the trial committee panel. He, as accuser, was the one who drew the five names from a hat. Probably by coincidence on each of the three occasions he drew his own name from the hat but declined to serve as both accuser and judge. It was in such an atmosphere that the trials were conducted. While this individual did not actually serve on the trial committee it sheds light on the impartiality of the 11 members selected by the council president. It has been said that '' It is shocking to one's sense of fair play that persons defamed should be selected to try the defamatory charge, and it is sufficient for the purposes of this case to hold that they are disqualified by a direct interest in the subject-matter of the controversy.'' (*Wilcox* v. *Supreme Council of Royal Arcanum,* 210 N. Y. 370, 380.)

The issue was raised both at the union trials and upon the trial herein. While the objections of these appellants may not have been articulated in the language of the legal profession it is clear that they continually raised the question that the trial committee was illegally constituted. As has been stated — out of six separate sets of charges only one was determined upon the merits and that has been found to have been decided without any evidence to support the determination. In the other five cases the respective appellants pursued their objections to the several trial committees to the point of refusing to stand trial. Thereupon, the substantive charges were apparently dropped and appellants found guilty of contempt for such refusal.

To the plaint of respondents' counsel that this question is raised for the first time on appeal it is only necessary to direct attention to plaintiffs' proposed findings of fact numbered 25 and 26. Therein the trial court found as a fact the existence of the heretofore-quoted provision of the by-law and the further fact that the 11 members were not elected but appointed by the council president. The court, however, refused to find conclusions of law numbered four and five that '' The failure of

the District Council to elect its trial committee was contrary to section 25 '' and that '' All trials before the trial committees of the District Council not elected as provided by section 25 of the by-laws * * * were absolutely void.''

A decision very much in point is *Jose* v. *Savage* (123 Misc. 283), wherein an identical by-law of a local union of this same brotherhood was considered. It appeared that certain charges under the jurisdiction of a district council had been preferred against a union member. Justice PROSKAUER writing at Special Term said (p. 284): '' Whether the district council had jurisdiction at all is open to serious question. Certainly it could act only in strict accordance with the by-laws. The by-laws of the district council (§ 27) provide that a trial committee of eleven members shall be elected at the first meeting in July. At the July meeting prior to the trial eleven men were elected. Three of them did not sit upon this trial committee and three others who were never elected did sit. Defendants claim that the terms of office as district delegates of the three elected had expired and their successors as district delegates from their respective locals sat in their place. Succession as delegate, however, did not mean *ipso facto* succession on the trial committee. There were approximately thirty locals and only eleven members of the trial committee. The vacancies on the trial committee caused by the expiration of the term of these three men were thus never legally filled. The three claiming to fill them were never appointed or elected to the so-called trial committee and the committee, therefore, had no valid existence.''

The appellants were tried before committees that were illegally constituted and similarly never had a valid existence. It follows that their determinations may not stand. The appellants, Fittipaldi, Loniewski and Fargo are entitled to be reinstated as members in good standing of Local Union No. 12 as of the date of their suspensions. The appellant, Morrison, is entitled to be reinstated to full membership rights in defendant Local No. 2355. The fines assessed against all appellants should be annulled and if paid they should be refunded. The appellants are entitled to have refunded any amounts paid by them for appeal fees. The complaints of appellants assert claims for damages, including lost earnings, as the result of the wrongful conduct of the defendants. These issues were not reached by the trial court and a new trial should be had as to them. This court expresses no opinion as to this facet of the case. Some of the guiding principles have been enunciated in *Madden* v. *Atkins* (4 N Y 2d 283, 294–297).

The judgment insofar as appealed from, should be reversed upon the law and facts, insofar as it dismissed the complaints of appellants upon the merits, with costs to appellants and judgment directed in favor of the plaintiffs (1) directing the reinstatement of the appellants, Fittipaldi, Loniewski and Fargo as members in good standing of Local No. 12 as of the dates of their suspension; (2) directing that the appellant, Morrison, be reinstated to full membership rights in defendant Local Union No. 2355; (3) annulling the assessments of fines upon the appellants and if paid directing the repayment thereof; (4) directing the repayment of appeal fees paid by appellants, Fittipaldi and Fargo and (5) remitting the action to Special Trial Term for a new trial of the issues presented by the pleadings as to the damages, if any, sustained or recoverable by the appellants.

All concur. Present — McCurn, P. J., Williams, Bastow, Goldman and Halpern, JJ.

Judgment insofar as appealed from reversed upon the law and facts, with costs to appellants and judgment directed in favor of plaintiffs in accordance with the opinion and matter remitted to the Special Trial Term for further proceedings in accordance with the opinion. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.